2018 PA Super 234

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| STEVEN MICHAEL VUCICH | : | |
| | : | |
| Appellant | : | No. 1855 WDA 2016 |

Appeal from the Judgment of Sentence November 8, 2016
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0011096-2015

BEFORE:  BOWES, J., OLSON, J., and KUNSELMAN, J.

OPINION BY BOWES, J.:                                      **FILED AUGUST 27, 2018**

Steven Michael Vucich appeals from the judgment of sentence of ten to twenty years incarceration imposed following his jury trial convictions for, *inter alia*, involuntary deviate sexual intercourse with a child.  We vacate Appellant's designation as a sexually violent predator ("SVP") and remand for further proceedings.

The trial court summarized the factual history in its Pa.R.A.P. 1925(a) opinion:

> Briefly, the evidence presented at trial established that when he was nine (9) years old, [C.D.]'s mother married [Appellant] and he moved into their home. On one (1) occasion when he was [ten] years old, [C.D.] had just gotten out of the shower when [Appellant] took him into the bedroom, removed his towel, knelt in front of him and put [C.D.]'s penis in his mouth. Thereafter, [Appellant] would have "cuddle time" with [C.D.], where the two would lie in bed and the Defendant would touch and rub [C.D.]'s penis. [Appellant] also let [C.D.] play certain video games his mother had deemed too violent, but would rub and touch his

penis while he played. [Appellant] instructed [C.D.] not to tell his mother what had happened. Approximately 10 years later, [C.D.] disclosed the abuse to his therapist and eventually told his mother what had happened.

Trial Court Opinion, 6/29/17, at 2.

Appellant was charged with rape of a child, involuntary deviate sexual intercourse with a child, unlawful contact with a minor, corruption of minors, and indecent assault with a person less than thirteen. Following a jury trial, Appellant was convicted of all crimes except rape of a child. On November 8, 2016, Appellant was sentenced as previously referenced. On December 8, 2016, Appellant filed a timely notice of appeal. That same day, the trial court held a hearing to determine if Appellant was an SVP. The trial court determined that he was, and entered a separate order to that effect on December 21, 2016. Appellant did not file a separate notice of appeal from that order.

Appellant complied with the trial court's order to file a concise statement of matters complained of on appeal, and the trial court issued an opinion in response. The matter is ready for review of Appellant's claims:

I. Did the lower court abuse its discretion when it permitted the introduction and publication of Commonwealth Exhibits [two] and [three], photographs of the complainant taken at around the time of the alleged incidents, as the photos were irrelevant, prejudicial, and intended to inflame the passions of the jury?

II. Did the lower court err in failing to exclude language from Standard Jury Instruction 4.13(B) during *voir dire*, as requested by the Motion in *Limine*? Moreover, was it

erroneous to give this same instruction to the jury as it is only a partially correct statement of the law?

III.    Must the determination that [Appellant] is a [SVP] be vacated as the mechanism for SVP determinations was deemed unconstitutional in *Commonwealth v. Butler*[, 173 A.3d 1212 (Pa.Super. 2017)]?

Appellant's brief at 7.

Appellant's first issue challenges the admission of two photographs depicting C.D. when he was between the ages of nine and eleven.  The admission of evidence is vested within the discretion of the trial court.  We apply the following principles to an evidentiary challenge:

> In determining whether evidence should be admitted, the trial court must weigh the relevant and probative value of the evidence against the prejudicial impact of that evidence. Evidence is relevant if it logically tends to establish a material fact in the case or tends to support a reasonable inference regarding a material fact. Although a court may find that evidence is relevant, the court may nevertheless conclude that such evidence is inadmissible on account of its prejudicial impact.

*Commonwealth v. Storey*, 167 A.3d 750, 758 (Pa.Super. 2017) (citation omitted).

The evidence was introduced during the testimony of C.D.'s mother. One photograph was a school picture from fourth or fifth grade; the other was a photograph of C.D. at his grandparents' house.  The Commonwealth moved to enter the photographs into evidence.  Appellant stated, "I put my

objection on the record." N.T., 8/9-10/16, at 98. The trial court replied, "It will be so noted." *Id*. at 99.[1]

Citing **Commonwealth v. Funk**, 29 A.3d 28 (Pa.Super. 2011), the trial court's opinion discussed the following two-part test applied to inflammatory photographs:

> First, the court must determine whether the photograph is inflammatory. This Court has interpreted inflammatory to mean the photo is so gruesome it would tend to cloud the jury's objective assessment of the guilt or innocence of the defendant. Next, if the trial court decides the photo is inflammatory, in order to permit the jury to view the photo as evidence, it must then determine whether it is has essential evidentiary value.

---

[1] Following a request from this Court, the parties submitted a supplemental certified record containing the photographs at issue. The photographs generically depict what C.D. looked like between the ages of nine and eleven. One photograph is from a school portrait, while the other shows C.D. sitting outside on a wall.

The Commonwealth maintains that this claim is waived for failing to specify the grounds for his objection. Pursuant to Pa.R.E. 103(a)(1)(B), a party is required to make a timely objection and state the specific ground in order to preserve that issue for appeal, "unless it was apparent from the context." We have found waiver of evidentiary issues due to generic objections. **See Commonwealth v. Lopez**, 57 A.3d 74, 82 (Pa.Super. 2012) ("This Court has deemed an appellate claim that testimony constituted inadmissible hearsay waived where, at trial, counsel merely said without [an] explanation 'Objection.'") (citation omitted). However, other cases applying Pa.R.E. 103 have noted that "[e]ven a general objection is adequate to preserve a challenge to an evidentiary ruling where the evidence is inadmissible for any purpose[.]" **Cominsky v. Donovan**, 846 A.2d 1256, 1258 n.2 (Pa.Super. 2004). Presently, the trial court readily apprehended the nature of Appellant's objection, which sought to exclude the evidence as inadmissible for any purpose. We therefore decline to find waiver.

*Id*. at 33 (citations omitted). The Commonwealth likewise invokes this test. "First, the court must decide whether a photograph is inflammatory by its very nature." Commonwealth's brief at 12.

Since a photograph is simply a type of demonstrative evidence, *Commonwealth v. Serge*, 896 A.2d 1170, 1177 (Pa. 2006), it, like all other types of evidence, is subject to general relevancy principles. "All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402. The usual context for a challenge to a photograph is, as noted, a gruesome photograph in which the relevance of the item is obvious and undisputed. The two-part inflammatory test relied upon by the trial court is simply a specific prohibition of otherwise admissible evidence.

However, viewing the photograph through the inflammatory framework misses the mark, as Appellant does not assert that the photograph is inadmissible on that basis. Instead, Appellant contends that the photographs were legally irrelevant and therefore inadmissible. *Commonwealth v. Wilson*, 147 A.3d 7, 15 (Pa.Super. 2016) ("In general, relevant evidence, *i.e.*, evidence that logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding a material fact, is admissible.") (citation omitted). As applied herein, Appellant avers that the victim's appearance at the time of the crime did not tend to establish any

material fact. "With respect to the issue of whether the incidents [C.D.] testified to had actually occurred, his likeness at the younger age does nothing to advance the inquiry." Appellant's brief at 13. We now examine the trial court's rationale for admitting the photograph, as set forth in its opinion after concluding that it was not inflammatory:

> As [C.D.] explained during his testimony, he was [ten] years old at the time of the assaults. Given his young age, he had difficulty processing and dealing with what was happening to him and so, for many years, simply tried to forget what had happened. [C.D.] first told his therapist of the abuse when he was [eighteen] years old and by the time he testified at trial, he was [twenty] years old. It was difficult to equate the [twenty]-year old man testifying about something that had happened so long ago with the child who was unable to somehow stop or even deal with the attacks. The two pictures introduced by [C.D.]'s mother helped the jury to picture [C.D.] as a child so that the jury could better evaluate his testimony.

Trial Court Opinion, 6/29/17, at 6-7.

The connection between viewing depictions of a witness as a child and how those photographs can assist in the evaluation of the victim's in-court testimony is questionable. The parties have not supplied us with any citation to a Pennsylvania authority addressing the introduction of a photograph under these circumstances, where a victim testifies long after the commission of the crimes. However, numerous cases have addressed the related context of introducing photographs of a homicide victim.

Appellant relies upon *Commonwealth v. Story*, 383 A.2d 155 (Pa. 1978), a homicide case, to establish both the irrelevancy of the photograph and the prejudice generated by its admission. Therein, the prosecution

- 6 -

called, as its second witness, the victim's widow, Marilyn Wallace. Ms. Wallace produced photographs of the victim and his daughter, and also testified to "the victim's family status" as well as "other events of a personal nature." *Id*. at 157. Our Supreme Court held that the photograph was irrelevant and prejudicial:

> Here, Mrs. Wallace's testimony concerning her husband's family status and personal life, and her description of the photographs of her husband with his child have no "rational probative value" to the issue whether appellant feloniously killed Patrick Wallace. Rather, this evidence injected extraneous considerations into the case and prejudiced appellant by creating sympathy for the victim and his family.
>
> In its offer of proof, the Commonwealth stated that it thought that the jury was "entitled to know this man was married, he was a father, he in fact was a family man." The prosecutor further stated that the victim "is more than a body" and that the prosecutor wanted the jury "to get some feel for this activity of his life." It is evident that the Commonwealth explicitly sought to create sympathy for the victim and his family and to inflame the jury against appellant. We condemn such trial tactics.

*Id*. at 159.

The Supreme Court applied **Story** in **Commonwealth v. Rivers**, 644 A.2d 710 (Pa. 1994), which also discussed the propriety of introducing a photograph of a homicide victim. The Commonwealth asserted that the photograph was relevant because it established that "she had been a life in being prior to the homicide." *Id*. at 716. Thus, the Commonwealth linked the relevancy of the photograph to an element of the crime. Our Supreme Court stated that such photographs were "clearly irrelevant" as there was no dispute that the victim was alive prior to discovery of her body.

> The existence of Ms. Burt as a life in being was clearly established through the testimony of various witnesses. The Commonwealth therefore did not need the photograph to establish this fact. This photograph was introduced for the purpose of engendering sympathy for the victim with the intent of creating an atmosphere of prejudice against the defendant. The admission of this type of photograph is error. Photographs of this type are clearly irrelevant to the central issue at trial, which is the guilt or innocence of the accused. **Only where the victim's character or physical abilities are called into question will such evidence be relevant.**

*Id*. at 716 (emphasis added, citations omitted).

Our Supreme Court recently distanced itself from the notion that photographs of a homicide victim are relevant only for the grounds referenced in the foregoing emphasized language. In ***Commonwealth v. Smyrnes***, 154 A.3d 741 (Pa. 2017), Jennifer Lee Daugherty, a mentally challenged woman, was subjected to horrific torture and abuse at the hands of six criminals prior to her murder. Ms. Daugherty's body was discovered with her hair cut close to her scalp. A witness testified that the group cut Ms. Daugherty's hair during the ordeal. The Commonwealth introduced a photograph of Ms. Daugherty depicting her normal hairstyle. Our Supreme Court held that the photograph was relevant, since its evidentiary purpose had some connection to the Commonwealth's case-in-chief:

> Presently, the Commonwealth established a plausible basis for relevance, contrasting the length of the victim's hair as depicted in the picture and verified by Ms. Daugherty's mother (longer style with curled ends) with the appearance when the victim's body was presented for autopsy (at which time her hair was cut close to the scalp in a haphazard fashion). The contrasting images were corroborative of Meidinger's testimony concerning

an instance of domination which occurred during the kidnapping ordeal preceding Ms. Daugherty's murder.

. . . .

[G]iven that the photograph had some relevance, and the limited use of it made by the Commonwealth, we decline [to] find an abuse in the trial court's discretionary evidentiary ruling.

*Id*. at 754-55 (footnote and citation omitted). Nonetheless, the High Court reiterated the statement from *Rivers* that such evidence is normally irrelevant and should be avoided. *Id*. at 754 ("We recognize that it was by no means essential to the prosecution to place this photograph before the jury. Moreover, we caution the Commonwealth concerning the value of restraint in scenarios involving potential prejudice connected with such non-essential evidence.").

We find that these principles naturally extend to the present circumstances. There are obvious parallels between the Commonwealth's seeking to establish through photographic proof what a homicide victim looked like around the time of his or her death, and the facts *sub judice*, in which the Commonwealth sought to show the victim's appearance near the time of the crimes. Just as such evidence is generally irrelevant in a homicide prosecution—at least in cases where the "life in being" element is not in question—so too were C.D.'s childhood pictures irrelevant, as Appellant did not contest that C.D. was actually a child at the times he testified that the abuse occurred. There was thus no need to prove to the jury what C.D. looked like as a child, rendering the evidence irrelevant.

We further disagree with the Commonwealth's assertion that the evidence was relevant because the photographs "were necessary to visually depict his appearance at the time the crimes occurred." Commonwealth's brief at 13. It is undeniable that, due to the passage of time in this case, photographs or some other type of demonstrative evidence were indeed necessary to establish C.D.'s appearance at the time of the crimes. The Commonwealth's argument, however, begs the question by assuming that the victim's visual appearance at the time of the crimes needed to be established in the first place.[2] Pursuant to the principles in **Story** and its progeny, we conclude that the photographs were irrelevant, and therefore inadmissible.

The Commonwealth alternatively submits that any error was harmless beyond a reasonable doubt. Our Supreme Court has set forth the following:

> [A]n erroneous ruling by a trial court on an evidentiary issue does not require us to grant relief where the error was harmless. The Commonwealth bears the burden of demonstrating harmless error. Harmless error exists where: (1) the error did not prejudice the defendant or the prejudice was *de minimis;* (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison

---

[2] To take the Commonwealth's assertion that the photographs were necessary at face value, then the failure to establish visual proof of a victim's appearance would render the evidence insufficient as a matter of law. Obviously, that cannot be the case. The evidence was surely relevant under an ordinary use of that term, but not in the legal sense.

that the error could not have contributed to the verdict. *Commonwealth v. Chmiel*, 889 A.2d 501, 521 (Pa. 2005) (citations omitted).

We find that any prejudice was *de minimis* and therefore the error was harmless beyond a reasonable doubt. There is a natural overlap between what the photographs show and how the prosecution uses the photographs, and any resulting prejudice. In *Story*, our Supreme Court noted that the photographs were introduced along with testimony of the victim's "family status" and "other events of a personal nature." *Story*, *supra* at 157. Herein, as the Commonwealth notes, the photographs were referenced briefly, and the prosecutor did not revisit or otherwise draw attention to the photographs following their introduction. This circumstance is more akin to *Rivers*, in which our Supreme Court concluded that introducing the victim's photograph was harmless beyond a reasonable doubt:

> In the instant case the photograph was identified by the decedent's daughter, who merely related when and where the photograph was taken and verified that it was an accurate depiction of her mother immediately prior to her death. The testimony surrounding the photograph in this case was limited. Further, the actual polaroid snapshot of the victim does not portray her as particularly old or frail, nor does it reveal that she was an amputee seated in a wheelchair, as in the photograph the victim is seated behind a table. Although admission of the photograph was clearly improper and irrelevant, in light of the overwhelming circumstantial evidence of the appellant's guilt, we conclude that the error was harmless.

*Rivers*, *supra* at 716.

- 11 -

Therefore, while the photographs were irrelevant, their use was limited, and, according to the parties' descriptions of the items, the exhibits simply depicted C.D.'s general appearance at the time of these crimes. While improperly introduced, we conclude that any prejudicial effect was *de minimis*.

Related to this point, there is one obvious distinction between the scenarios in the examined homicide cases and these circumstances. In a homicide prosecution, but for the introduction of demonstrative evidence of the victim, the jury will have no frame of reference for the victim's appearance. In contrast, the jury was obviously aware of the fact that C.D. was once a child, and it takes no great leap of imagination to imagine what a witness may have looked like as a child. This point further highlights the *de minimis* prejudice.

Finally, we briefly note that our decision today is limited to these factual circumstances, wherein the photographs were displayed for no purpose other than establishing C.D.'s appearance at the time of the crimes. We do not hold that the appearance of a child victim is *per se* irrelevant. **Cf. State v. Klein**, 593 N.W.2d 325, 327 (N.D. 1999) (finding that photograph depicting twelve-year-old victim at age six, when the molestation occurred, was relevant; further noting that the photo "permitted the jury to see what [the victim] looked like at the age of six when he asserted he had been

deathly afraid of Klein, as opposed to his appearance at the trial when he was twelve years old and testified he was no longer afraid of Klein").

Appellant's second issue challenges the trial court's instruction to the jury that the testimony of a victim, standing alone, suffices to establish guilt. Appellant challenges that point in two different contexts: *voir dire* and jury instructions. As applied to *voir dire*, we find that Appellant's challenge is waived. First, *voir dire* was not transcribed and what the jury was asked is not of record. Second, according to a status conference transcript, which is not in the certified record but is quoted by both parties, Appellant agreed to the questions. "The Commonwealth's proposed *voir dire* questions are acceptable and agreed to by the defense[.]". Appellant's brief at 18 n.1. (quoting transcript).

We now address Appellant's challenge to the jury instruction. A trial court has discretion in instructing the jury, and "can choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. Only where there is an abuse of discretion or an inaccurate statement of the law is there reversible error." ***Commonwealth v. Hawkins***, 701 A.2d 492, 511 (Pa. 1997) (citations omitted). Furthermore:

> a trial court need not accept counsel's wording for an instruction, as long as the instruction given correctly reflects the law. It is axiomatic that, in reviewing a challenged jury instruction, an appellate court must consider the charge in its entirety, not merely isolated fragments, to ascertain whether the instruction fairly conveys the legal principles at issue. Instructions will be

- 13 -

upheld if they adequately and accurately reflect the law and are sufficient to guide the jury properly in its deliberations.

***Commonwealth v. Rainey***, 928 A.2d 215, 242–43 (Pa. 2007) (citations omitted).

In a pre-trial motion, Appellant raised a challenge to Pennsylvania Standard Jury Instruction 4.13b:

The Defense requests that this Honorable Court exclude Jury Instruction 4.13b, as it is misleading and unfairly prejudices the jury against the defendant.

Pennsylvania Standard Jury Instruction 4.13b states:

The testimony of [name of victim] standing alone, if believed by you, is sufficient proof upon which to find the defendant guilty in this case. The testimony of the victim in a case such as this need not be supported by other evidence to sustain a conviction. Thus you may find the defendant guilty if the testimony of [name of victim] convinces you beyond a reasonable doubt that the defendant is guilty.

This instruction is misleading because: 1) it inappropriately tells the jury that the alleged victim's testimony is sufficient to convict; 2) [i]t misstates the burden of proof by omitting the necessity to prove each element of each offense beyond a reasonable doubt.

Motion, 8/2/16, at 2.

While no order appears on the docket denying Appellant's motion, the trial court clearly did so, as its jury charge tracked the suggested instruction quoted above:

The testimony of the victim standing alone if believed by you is sufficient proof upon which to find the defendant guilty. The testimony of the victim in a case such as this need not be supported by other evidence to sustain a conviction. Thus, you

- 14 -

may find the defendant guilty if the testimony of the victim convinces you beyond a reasonable doubt that the defendant is guilty.

N.T., 8/9-10/16, at 160-61. Appellant objected following the close of instructions, thereby preserving his challenge.

Preliminarily, we note that Appellant's brief advances an argument that substantively aligns with the argument presented in his pre-trial motion. To wit, Appellant maintains that an accurate charge requires the judge to instruct the jury that the testimony of the victim must still prove each element of the crimes beyond a reasonable doubt, as opposed to simply believing the victim in a generic sense. "They believe the victim - enough to convict. But one of the elements is missing - cannot convict. This illustrates the problem with the instruction given in this case." Appellant's brief at 25.

Where Appellant's current argument departs from his pre-trial motion is in the remedy. Appellant's pre-trial motion did not assert that the instruction could be saved through modification; rather, he requested that the entire instruction be excluded. "[T]he defense requests that this Honorable Court exclude Jury Instruction 4.13b, as it is misleading and unfairly prejudices the jury against the defendant." Motion, 8/2/16, at 4. On appeal, Appellant now argues that the standard jury instruction should have been altered as follows:

> A completely correct statement of the law would include the *proviso* that a victim's testimony, if believed by the jury, and if it establishes each element of the crimes charged beyond a reasonable doubt, can be enough for a conviction. Not including

- 15 -

the second clause above limits the defendant's rights to due process and a fair trial, and also compromises the Commonwealth's burden of proving each element of a crime beyond a reasonable doubt.

Appellant's brief at 26.

Arguably, we could find his current claim waived as it suggests that the trial court could have remedied the error through a modification, whereas he requested that the trial court simply exclude the instruction in its entirety.[3] We nevertheless decline to do so, as Appellant's argument affords no relief.

As quoted, our standard of review asks whether the charge "in its entirety . . . fairly conveys the legal principles at issue." **Rainey**, **supra** at 243. We find that the instructions, read as a whole, satisfy that test. As Appellant concedes, the trial court "reminded the jury of the presumption of innocence, and that the Commonwealth 'always had the burden of proving each and every element of the crimes charged beyond a reasonable doubt.'" Appellant's brief at 24 (citations to transcript omitted).

Appellant nevertheless maintains that the jury was faced with contradictory instructions, as it could have found that C.D. was generally believable, thereby permitting a conviction, even though it may not have found his testimony credible with respect to one or more elements of the

_____

[3] We also note that Appellant did not present any type of due process challenge in his motion.

- 16 -

crimes. This ascribes a level of incompetence to the jury that our system flatly rejects. "It is well settled that the jury is presumed to follow the trial court's instructions." *Commonwealth v. Cash*, 137 A.3d 1262, 1280 (Pa. 2016). When read as a whole, and not in isolation, the jury was correctly informed that it was required to find that the Commonwealth satisfied each element of all crimes beyond a reasonable doubt. The trial judge informed the jury of that necessity at the close of its charge. "[You must] thereby decide whether or not the Commonwealth has met its burden of proving the defendant guilty beyond a reasonable doubt." *Id*. at 165. The jury was also informed of the same principle at the beginning of the charge. "[I]f the Commonwealth does meet the burden of proof beyond a reasonable doubt, then your verdict should be guilty." *Id*. at 154. Therefore, when read as a whole, the instructions "adequately and accurately reflect[ed] the law and [were] sufficient to guide the jury properly in its deliberations." *Rainey*, *supra* at 243. We therefore find no error.[4]

Finally, we address Appellant's claim that his SVP designation must be reversed pursuant to *Commonwealth v. Butler*, 173 A.3d 1212 (Pa.Super. 2017). As this Court has explained,

---

[4] Furthermore, Appellant's speculation that the jury may have been led to convict based solely on the idea C.D.'s testimony was generally believable is severely undermined by the jury's verdict, as it acquitted him of rape of a child, while finding him guilty of the remaining crimes.

> ***Butler*** applied ***Commonwealth v. Muniz***, ––– Pa. ––––, 164 A.3d 1189 (2017), which held that the sexual offender requirements under the Sexual Offender Registration and Notification Act, including its SVP framework, constitute punishment. ***Butler*** determined that, as a result of ***Muniz***, the SVP procedure is subject to the constitutional requirement that the facts constituting that punishment must be found by a fact-finder beyond a reasonable doubt. Thus, 42 Pa.C.S. § 9799.24(e)(3), which requires the trial court to find the relevant facts by clear and convincing evidence, was deemed unconstitutional. ***Id***. at 1218.

***Commonwealth v. Tighe***, 184 A.3d 560, 583 (Pa.Super. 2018).

The Commonwealth, while conceding that ***Butler*** renders Appellant's SVP designation illegal and implicates the legality of sentence, claims that this issue is not before the court since the SVP finding occurred **after** his judgment of sentence was imposed. In the Commonwealth's view, the SVP order is a separate order from which the current notice of appeal does not lie. ***See Commonwealth v. Whanger***, 30 A.3d 1212, 1215 (Pa.Super. 2011) ("The sentencing order was one thing; the SVP order was another."). According to the Commonwealth, Appellant must raise this claim in collateral proceedings.

We disagree. The Commonwealth's citation to ***Whanger*** fails to address the changes in law occasioned by ***Muniz*** and ***Butler***. We see no reason to ignore the fact that the later SVP hearing is now considered part of Appellant's sentence. While we recognize there is a procedural irregularity occasioned by the lack of a separate notice of appeal to the SVP order, we

decline to defer this issue to collateral review.[5]  The Commonwealth's reliance upon prior precedents deeming an SVP order a separately appealable order ignores case law that has abrogated those holdings.  As the law currently stands, SORNA constitutes criminal punishment, which necessarily includes the SVP framework employed by the trial court at the time of Appellant's SVP hearing.  We see no reason to waste judicial resources by forcing Appellant to raise this claim in collateral proceedings.  We therefore vacate the SVP portion of Appellant's sentence.

Finally, we note that Appellant was convicted of 18 Pa.C.S. § 3123, which is classified as a Tier III offense and requires lifetime registration.  *See* 42 Pa.C.S.A. § 9799.14(d)(4).  Thus, although our vacating Appellant's SVP designation does not alter the length of his registration requirements, we remand for the trial court to inform Appellant of his correct reporting obligations.

_____

[5] We also add that the Commonwealth's suggestion poses its own set of irregularities.  Had Appellant sought collateral review while his appeal is pending before this Court, the PCRA court would have been compelled to find that it lacked jurisdiction since his direct appeal from his judgment of sentence precluded the filing of a PCRA petition.

Therefore, according to the Commonwealth, the PCRA court could not address the legality of sentence due to this Court having jurisdiction over his criminal sentence, while we simultaneously cannot disturb the same criminal sentence because we **also** lack jurisdiction.  It cannot be that Appellant's SVP designation exists in some phantom zone, unreviewable by any court.

SVP designation vacated. Judgment of sentence affirmed in all other respects. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/27/2018