J. S70010/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| LAWRENCE PICKENS, | : | No. 2795 EDA 2017 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, April 26, 2017,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0002510-2016

BEFORE:  GANTMAN, P.J., McLAUGHLIN, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:  **FILED APRIL 22, 2019**

Lawrence Pickens appeals the April 26, 2017 judgment of sentence in which the Court of Common Pleas of Philadelphia County sentenced him to an aggregate term of life imprisonment for murder in the first degree, violation of the Uniform Firearms Act, and possession of an instrument of crime.[1]  After careful review, we affirm.

The facts, as recounted by the trial court, are as follows:

> Before midnight on August 6, 2015, the decedent[,] Moses McMillian[,] borrowed money from his sister Jazzmen McMillian and walked to the Happy Garden Chinese Store at the intersection of Norris and Croskey Streets in North Philadelphia.  There, the decedent encountered two juvenile females, sisters A.D. and T.D., aged fourteen and fifteen, respectively.  The three proceeded to argue with

---
[1] 18 Pa.C.S.A. §§ 2502, 6106(a)(1), and 907(a), respectively.

each other, whereupon one of the sisters slapped the decedent.

The decedent returned to his home at 1931 North Croskey Street and informed Jazzmen McMillian, his brother Michael McMillian, family friend Jimmy Flippen, and other men at the house that he had been attacked at the Chinese store. The group accompanied the decedent back to the store, where they verbally confronted A.D. and T.D. and returned home.

A.D. and T.D. ran to their home, where they encountered their cousin Taleia Travers and recounted the events that occurred at the Chinese store. Travers then joined with her friends Yasmene "Momma's" Johnson, Ra'Shonda "Ray-Ray" Mack, and Roshaanda "Mommas" Tolbert and proceeded to the McMillian home at 1931 North Croskey Street, rang the front doorbell and challenged Jazzmen McMillian to a fight.

Travers' group, comprised primarily of females, and Jazzmen McMillian's group, comprised primarily of males and containing the decedent, proceeded to the middle of the block to continue the dispute. The argument escalated into a fist fight between Travers and Jazzmen McMillian. When it appeared that Travers was winning the fight, the decedent intervened by punching Travers. After Mack, Johnson, and Tolbert began kicking Jazzmen McMillian, the decedent pushed them away from his sister. The McMillian group then retreated back to 1931 North Croskey Street.

Immediately after the fight, Ra'Shonda Mack called the father of her child, [appellant], and informed him that the decedent assaulted her during the fight. Shortly thereafter, [appellant], armed with a black revolver, arrived on foot. He was accompanied by a male identified as "Spaz," who rode in on a bicycle. [Appellant] showed Mack the revolver and travelled with the group back to 1931 North Croskey Street.

Approximately twenty minutes after the fight between Travers and Jazzmen McMillian occurred, the decedent, Michael McMillian, and Flippen responded to their doorbell and discovered the Travers group, with [appellant] in front of their home. There, Mack attempted to goad Jazzmen McMillian, who was upstairs with her children, into returning outside to fight. During a discussion between Mack and the McMillians, [appellant] asked Flippen, "Damn, you going to let your man put his hands on my baby mom?"

During the confrontation, Jazzmen McMillian stuck her head out of the upstairs window and began to argue with Mack. A fight then erupts between the two groups, with Mack and Tolbert throwing punches at the decedent and his brother, and Mack spraying both groups with Mace. In the ensuing chaos, [appellant] approached the decedent and shot him in the chest and abdomen.

The decedent clutched his chest and ran upstairs to the second floor living space, leaving a blood trial [sic]. After he collapsed on the second floor, Jazzmen McMillian flagged down Housing Authority Police Officers Kyle Barrie and Terrance Matthews, who transported the decedent to Temple University Hospital where he was pronounced dead on August 8, 2017 at 2:03 a.m.

Deputy Chief Medical Examiner Dr. Albert Chu, an expert in forensic pathology, examined the decedent's autopsy report and concluded that the cause and manner of death was homicide by multiple gunshot wounds. The decedent suffered a fatal, perforating gunshot wound to his right chest that passed through his right lung and exited the right side of the upper back. A second projectile entered the right side of the decedent's central abdomen, travelled through soft tissue, and was recovered from the right hip. The entrance wounds exhibited evidence of stippling, indicating that the barrel of the shooter's gun was between two and two and one-half feet away from the decedent when he shot him.

> After the shooting, [appellant] handed the pistol to Travers, who returned to the Dennis sisters' home at 2311 Norris Street and threw the weapon on a couch. Yasmene Johnson retrieved the gun from the couch and left the house. The weapon was never recovered.
>
> On August 17, 2015, United States Marshals, working in conjunction with the Philadelphia Police Fugitive Squad, apprehended [appellant] at 2400 Glenwood Street in Philadelphia. During his arrest, [appellant] attempted to escape via the back door.
>
> In August and September 2015, Michael McMillian, Tolbert, Johnson, and Mack gave statements to Philadelphia Police Detectives that identified [appellant] as the shooter. In April 2016, approximately eight months after [appellant's] arrest, Travers gave a statement wherein she identified [appellant] as the shooter.

Trial court opinion, 10/24/17 at 2-5 (citations to record omitted).

Following the conviction and sentencing, appellant filed a post-sentence motion. On May 12, 2017, the trial court denied the motion. Appellant did not file an appeal. On July 31, 2017, appellant sought reinstatement of his appellate rights ***nunc pro tunc*** through a Post Conviction Relief Act[2] ("PCRA") petition. On August 7, 2017, the PCRA court granted the petition and reinstated appellant's appellate rights. On August 29, 2017, appellant filed a notice of appeal. On September 6, 2017, the trial court ordered appellant to file a concise statement of errors

---

[2] 42 Pa.C.S.A. §§ 9541-9546.

complained of on appeal, pursuant to Pa.R.A.P. 1925(b). On September 27, 2017, appellant complied with the order. On October 24, 2017, the trial court filed an opinion, pursuant to Pa.R.A.P. 1925(a).

On appeal, appellant raises the following issues for this court's review:

> I. Is [appellant] entitled to a new trial whereas [sic] here, the verdict is not supported by the weight of the evidence?
>
> II. Is [appellant] entitled to a new trial where, as here, the [t]rial [c]ourt erred when it instructed the jury in such a fashion that same was a directed verdict?

Appellant's brief at 3.

Initially, appellant contends that the verdict was against the weight of the evidence. A review of the argument section of his brief reveals that appellant is not raising a weight claim but rather the sufficiency of the evidence to sustain the verdict. We find this issue waived as the issue is completely undeveloped in the brief. The argument consists of one half-page, cites three cases, but never addresses any of the evidence.

Appellant next contends that he must be awarded a new trial because the trial court erred when it instructed the jury.

This court has adopted the following standard of review with respect to assessing jury instructions on appeal:

> A trial court has discretion in instructing the jury, and "can choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. Only where there is an abuse of discretion or an inaccurate statement of the

law is there reversible error." ***Commonwealth v. Hawkins***, 549 Pa. 352, 701 A.2d 492, 511 (1997) (citations omitted). Furthermore:

> a trial court need not accept counsel's wording for an instruction, as long as the instruction given correctly reflects the law. It is axiomatic that, in reviewing a challenged jury instruction, an appellate court must consider the charge in its entirety, not merely isolated fragments, to ascertain whether the instruction fairly conveys the legal principles at issue. Instructions will be upheld if they adequately and accurately reflect the law and are sufficient to guide the jury properly in its deliberations.

> ***Commonwealth v. Rainey***, 593 Pa. 67, 928 A.2d 215, 242-43 (2007) (citations omitted).

***Commonwealth v. Vucich***, 194 A.3d 1103, 1111 (Pa.Super. 2018), ***appeal denied***, 199 A.3d 885 (Pa. 2018).

Appellant argues that the trial court issued a binding instruction that limited the jury's ability to render a verdict of its own choosing. In the instruction in question, the trial court stated:

> In order to convict the defendant of first-degree murder, there are three specific elements that the Commonwealth must prove beyond a reasonable doubt. First, that Moses McMillian is dead; second, that the defendant killed him, or the accomplice; and, third, that the defendant did so with the specific intent to kill and with malice.

> So the defendant has the specific intent to kill if he has fully formed the intent to kill and is conscious of his own intention. As my earlier definition of malice indicates, a killing by a person who has the specific intent to kill is a killing with malice. Stated

differently, a killing is with specific intent if it is willful, deliberate and premeditated. The specific intent to kill including the premeditation needed for first-degree murder does not require planning or previous thought for any particular length of time. It can occur quickly. All that is necessary is that there be time enough so the defendant can and does fully form an intent to kill and is conscious of that intention.

When deciding whether the defendant had the specific intent to kill, you should consider all the evidence regarding his words and conduct in the attending circumstances that may show his state of mind. If you believe that the defendant intentionally used a deadly weapon on a vital part of the victim's body, you may regard that as an item of circumstantial evidence from which you may, if you choose, infer that the defendant had the specific intent to kill.

If you find that the defendant -- if you find that the Commonwealth has proven all of the elements beyond a reasonable doubt, you must find the defendant guilty.

If you find that the Commonwealth has proven all of element -- has not proven all of the elements beyond a reasonable doubt, you must find the defendant not guilty.

Notes of testimony, 4/26/17 at 150-151.

The trial court then gave a similar instruction with regard to third-degree murder.

Appellant argues that the trial court instructed the jury to consider first the charge of first-degree murder before considering other possible verdicts and that the jury must find appellant guilty of first-degree murder if the elements were proven. He argues that this instruction as to the order of the

instructions precluded the consideration of a lesser charge and that the use of the word "must" forced the jury to find him guilty of first-degree murder.

However, a review of the instructions does not support appellant's assertions. First, the trial court later instructed the jury that it could consider first-degree murder and then third-degree murder, but was not required to do so. Specifically, the trial court stated, "Remember, if you go this way, if you conduct your deliberations in this way, you have to find each element of the charge beyond a reasonable doubt. So you can proceed in that way. You don't have to proceed in this way." *Id.* at 155.

With respect to the use of the word "must," the trial court explained its decision:

> [Appellant] fails to establish that this court abused its discretion or gave the jury an erroneous statement of law. The above charge accurately states each element of the charge, including the jury's discretion in considering circumstantial evidence and its obligation to acquit [appellant] if the Commonwealth fails to prove all the elements of the crime beyond a reasonable doubt. This [c]ourt, throughout the entirety of its charge, repeatedly informed the jury that the Commonwealth carried the burden of proving each element of the crimes charged beyond a reasonable doubt. Although [appellant] suggests that a softening of language with regard to the jury's suggested actions if the Commonwealth meets its burden is appropriate, the language employed by the [c]ourt is an accurate statement of the law.[Footnote 3] This [c]ourt's use of the word "must," as opposed to "should," was well within its discretion.
>
> > [Footnote 3] After trial counsel objected to this [c]ourt's use of the word "must,"

> this [c]ourt removed the reference from the elements sheets for First and Third-Degree Murder that were sent back to the jury room.

Trial court opinion, 10/24/17 at 6-7 (additional footnote omitted).

This court agrees with the trial court that the trial court did not abuse its discretion when it issued the jury instruction.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/22/19