**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL E. EWING | : | |
| | : | |
| Appellant | : | No. 60 WDA 2024 |

Appeal from the Judgment of Sentence Entered June 27, 2023
In the Court of Common Pleas of Beaver County Criminal Division at
No(s):  CP-04-CR-0000550-2022

BEFORE:  KUNSELMAN, J., SULLIVAN, J., and BECK, J.

MEMORANDUM BY BECK, J.:                                    **FILED: JULY 11, 2025**

Michael E. Ewing ("Ewing") appeals from the judgment of sentence entered by the Beaver County Court of Common Pleas ("trial court") after a jury convicted him of 101 counts of various child sex crimes, including rape of a child, involuntary deviate sexual intercourse ("IDSI") – complainant less than sixteen years of age, IDSI with a child, unlawful contact with a minor; statutory sexual assault, indecent assault – complainant less than thirteen years of age, indecent assault – complainant less than sixteen years of age, and corruption of minors.[1]  Ewing raises several evidentiary, sufficiency of the evidence, and discretionary aspects of sentencing claims.  Because we find the evidence insufficient to sustain several of Ewing's convictions of indecent

---

[1] 18 Pa.C.S. §§ 3121(c), 3123(a)(7), (b), 6318(a)(1), 3122.1(b), 3126(a)(7), (8), 6301(a)(1)(ii).

assault – complainant less than thirteen years of age, we vacate his judgment of sentence and remand this matter to the trial court for resentencing. In all other respects, we affirm.

This case arises out of Ewing's sexual assault of two minors, M.M. and H.H. The abuse occurred from the time M.M. and H.H. were eleven until they were fifteen years old. When they testified at trial, M.M. was twenty-four years old and H.H. was seventeen. The trial court summarized the trial testimony of the victims as follows:

> The Commonwealth called M.M., the alleged first victim, to testify[.] He began his testimony by explaining the relationship he and [Ewing] had. [N.T., 1/10/2023,] at 110-12. He testified that [Ewing] was an extended family member, but one who was close with the family and regularly visited the victim's home. *Id.* M.M. then testified that he and [Ewing] began spending one on one time together when he was 11 and that [Ewing] would come, pick him up, and the two of them would go out to do some activities like going to the wave pool or Kennywood. *Id.* at 112-13. He noted that his two sisters were never invited to go on any of these activities with [Ewing]. *Id.* at 113. He also testified that for a time, starting at age 11, he worked for [Ewing] as part of [Ewing]'s DJ business. *Id.* at 113-14. After some of these activities or on nights when he helped [Ewing] with his DJ business, M.M. testified that [Ewing] would have him stay at his house instead of returning M.M. back to his family. *Id.* at 113. When he would spend the night at [Ewing]'s home, he stated that he would either sleep in the guestroom or in the basement[,] which was a finished entertainment room. *Id.* at 116-17. M.M. then [stated] that when he was 11, on one of the nights he was staying at [Ewing]'s home, he was awoken with a pillow over his head and someone (who M.M. identified as [Ewing]) touching him inappropriately. *Id.* at 117-18. At this point it was over his clothes, but [Ewing] was groping his privates for what M.M. believed to be 20 minutes, all while M.M. remained still with fear. *Id.* at 119-20. …

From this point on, M.M. testified that [Ewing] would grope him over his clothes in excess of 15 times from this first time at the age of 11 until the age of 15. *Id.* at 121. In addition, M.M. testified that [Ewing] would touch his genitals skin to skin and did so in excess of 25 times. *Id.* at 122. Furthermore, M.M. testified that the abuse didn't stop there, and that [Ewing] would also … place his penis into his mouth and while M.M. would clench his teeth, [Ewing] was able to penetrate his lips. *Id.* at 122-23. This happened in excess of 25 times from the ages of 11 to 15 according to M.M. *Id.* at 124. M.M. testified that on at least one occasion [Ewing] tried, unsuccessfully, to penetrate him anally. *Id.* at 126. Additionally, he testified that [Ewing] would place his penis in his mouth or force him to masturbate [Ewing], all of this in excess of 30 times. *Id.* at 127.

M.M. testified that he was scared to report what [Ewing] was doing to him, that he didn't fully understand what was being done to him, and that prior to all of this happening, [Ewing] was someone he cared about and enjoyed spending time with. *Id.* at 129-31. M.M. then testified about his sleep disorders which began to manifest at age 13 and about the negative impact they have had on his life. *Id.* at 132-133. Finally, he explained the circumstances that led to his coming out about [Ewing]'s abuse, about how his mother came to him and asked if anything had happened to him after hearing about something similar happening to a relative. *Id.* at 134. The individual in question was the alleged second victim H.H., whom M.M. [testified] that he had no significant interactions with prior to this case. *Id.* at 134-36. …

\* \* \*

H.H. was then called to testify…. [N.T., 1/11/2023,] at 5. He explained that for a period of time he was close with his uncle, [Ewing]. *Id.* at 6-7. He testified that at the time he was spending time with [Ewing] he was around 10 to 11 years old. *Id.* at 8. He testified that [Ewing] would take him out to do activities like going to the wave pool, and that they would get together rather frequently. *Id.* at 9-10. His sister was never invited to go on these activities. *Id.* at 12. He further stated that when they would go out together, he would stay the night at [Ewing]'s home before returning to his own house the next day. *Id.* at 10. When he stayed over, he explained that he would sleep in the basement and that [Ewing] would sleep on the floor very close to him. *Id.* at 11-12. Before the abuse, H.H. testified that he had a good

- 3 -

relationship with [Ewing] and felt safe with him. *Id.* at 12. H.H. stated that on one of these [overnight] visits, while he and [Ewing] were sleeping on the floor, he was awoken by a feeling of discomfort in his genital area. *Id.* at 13. He testified that though he was unsure at the time, he knows that [Ewing] was groping him over his clothing before he woke up. *Id.* at 14. At the time, he believed it may have been a dream, that he wasn't sure it happened, and that it was uncomfortable to talk about[,] so he chose not to say anything to anyone about it. *Id.* at 15. The next time he stayed overnight with [Ewing], early in the morning he was awoken again and this time he saw [Ewing] physically touching him over his clothes on his genitals. *Id.* at 16. [Ewing] went to place a pillow over H.H.'s face and H.H. claims at this point he shot up like he was freshly awake and got up, [Ewing] rolling over and pretending to be asleep. *Id.* Under the guise of a stomach ache, H.H. convinced [Ewing] to take him home, where he immediately told his mother that he did not want to go over to [Ewing]'s home anymore and blocked his phone number. *Id.* at 18. However, he stated he did not tell his mother about [Ewing]'s actions until the next morning before school. *Id.* H.H, then talked about how, despite his attempts to block out the memory, he often felt unsafe when he was alone even in his own home. *Id.* at 19-20. The next time he was anywhere near [Ewing] was at M.M.'s sister's graduation, where upon learning of [Ewing]'s presence, he refused to go in and instead stayed in the car. *Id.* at 21-22. He testified that he wasn't close with M.M. and that the two have never had much of a relationship, but that after his grandmother took him away from the party, his mother told M.M.'s family what transpired between [Ewing] and H.H. *Id.* at 22-23.

Trial Court Opinion, 2/6/2024, at 3-7 (formatting modified).

On January 12, 2023, following trial, a jury convicted Ewing on all counts. On June 8, 2023, the trial court sentenced Ewing to an aggregate term of 75 to 150 years in prison and found him to be a sexually violent predator.

On June 16, 2023, Ewing's retained counsel filed a motion in which he requested permission to withdraw from representation, that a public defender

be appointed in his place, and that Ewing receive an extension of time for filing post-sentence motions to allow the public defender's office time to review Ewing's case. **See** Motion to Withdraw as Counsel, 6/16/2023. The same day, the trial court granted defense counsel's motion to withdraw, appointed Ewing counsel from the public defender's office, and ordered Ewing to file post-sentence motions by September 15, 2023. **See** Trial Court Order, 6/16/2023.

On June 27, 2023, the trial court amended Ewing's judgment of sentence.[2] Ewing did not renew or re-file his request for an extension for filing post-sentence motions. **See Commonwealth v. Wenzel**, 248 A.3d 540, 545 (Pa. Super. 2021) ("[I]n cases where the trial court amends the judgment of sentence during the period it maintains jurisdiction pursuant to [42 Pa.C.S. § 5505], the direct appeal lies from the amended judgment of sentence."). On September 14, 2023, Ewing filed post-sentence motions that the trial court denied on December 12, 2023. On January 3, 2024, Ewing filed a notice of appeal.[3]

---

[2] The amended judgment of sentence did not substantially alter Ewing's sentence and has no effect on this appeal. **See** Amended Sentence Order, 6/27/2023.

[3] We could construe Ewing's post-sentence motions and notice of appeal as untimely, as he did not request an extension of time for filing his post-sentence motions after the trial court amended his judgment of sentence. **See Wenzel**, 248 A.3d at 547 (explaining that the appellant's timely post-sentence motions were moot after the trial court entered an amended

*(Footnote Continued Next Page)*

Ewing presents the following issues for review:

I.      Whether the trial court abused its discretion in permitting Jo Ellen Bowman to testify as a sexual assault victim expert where she improperly testified regarding the issue of witness credibility?

II.     Whether the trial court abused its discretion in permitting photographs of the victims as juveniles to be admitted as evidence where there was already testimony that the victims and [Ewing] were close and had a good relationship at one point?

III.    Whether the Commonwealth presented sufficient evidence to prove beyond a reasonable doubt that [Ewing] is guilty of [IDSI – complainant less than sixteen years of age] – counts 11-25?

IV.     Whether the Commonwealth presented sufficient evidence to prove beyond a reasonable doubt that [Ewing] is guilty of indecent assault [– complainant less than thirteen years of age] – counts 62-71?

V.      Whether the trial court abused its discretion when it sentenced [Ewing] in the aggravated range for count 72 without stating a specific reason for doing so?

---

judgment of sentence). We decline to do so, though, as the record reflects that the trial court did not advise Ewing of his post-sentence and appellate rights in the order amending his judgment of sentence or that such rights began anew after the court amended his judgment of sentence. **See** Amended Sentencing Order, 7/27/2023. This constitutes a breakdown in the operations of the court. **See Wenzel**, 248 A.3d at 547 (holding that the failure to advise an appellant that his post-sentence motion and direct-appeal rights began anew after the court amended his judgment of sentence constituted a breakdown in the courts); **Commonwealth v. Patterson**, 940 A.2d 493, 498 (Pa. Super. 2007) (stating that "courts of this Commonwealth have held that a court breakdown occurred in instances where the trial court, at the time of sentencing, either failed to advise [the appellant] of his post-sentence and appellate rights or misadvised him").

Ewing's Brief at 8-9 (reordered for ease of review; unnecessary capitalization omitted).

In his first issue, Ewing argues that the trial court abused its discretion in permitting Jo Ellen Bowman ("Bowman"), an expert on sexual assault victim behaviors, to testify that child sexual assault victims are untruthful in approximately five percent of cases. *Id.* at 24-25; *see also* N.T., 1/10/2023, at 83. Ewing asserts that this testimony was improper as it, "in effect, touched upon the credibility of sexual assault victims—and by extension, the credibility of both victims in this case." Ewing's Brief at 25.

We conclude that Ewing has waived this claim of error because his defense counsel failed to raise an objection to Bowman's testimony in this regard during trial. *See* N.T., 1/10/2023, at 83; *see also Commonwealth v. Konias*, 136 A.3d 1014, 1021-22 (Pa. Super. 2016) ("In order to preserve an issue for review, a party must make a timely and specific objection at trial. … Moreover, a party complaining, on appeal, of the admission of evidence in the court below will be confined to the specific objection there made."); *Commonwealth v. Houck*, 102 A.3d 443, 451 (Pa. Super. 2014) ("[T]he failure to make a timely and specific objection before the trial court at the appropriate stage of the proceedings will result in waiver of the issue"). Thus, Ewing's first claim is waived. *See Konias*, 136 A.3d at 1021-1022; *Houck*, 102 A.3d at 451.

In his second issue, Ewing argues that the trial court abused its discretion in admitting three photographs of the victims—a photograph of M.M. working with Ewing at Ewing's DJ business, a photograph of M.M. on a family vacation with Ewing, and a photograph of H.H. from around the time the sexual abuse occurred. Ewing's Brief at 26. Ewing asserts that these photographs were irrelevant, as they lacked probative value and were cumulative of other properly admitted testimony. *Id.* at 27-28.

"The admissibility of evidence is at the discretion of the trial court and only a showing of an abuse of that discretion, and resulting prejudice, constitutes reversible error." *Commonwealth v. Ballard*, 80 A.3d 380, 392 (Pa. 2013) (citation omitted). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence of record, discretion is abused." *Commonwealth v. Jerdon*, 229 A.3d 278, 284 (Pa. Super. 2019).

The trial court explained its decision to admit the three photographs as follows:

> Here, [Ewing] fails to recognize the full probative weight the photos carried at trial. These photos served a secondary purpose, to show the modus operandi of [Ewing]. They helped to show how he endeavored to build trust and faith with his victims and how his victims had a similar build and appearance. They helped show that these were not random acts of abuse, but the twisted fruit bor[n] from a cultivated and curated relationship.

Trial Court Opinion, 2/6/2024, at 15.

In *Commonwealth v. Vucich*, 194 A.3d 1103 (Pa. Super. 2018), the Commonwealth sought to introduce two photographs of a child sexual assault victim that showed the victim around the time when the abuse had occurred. *Id.* at 1106. In *Vucich*, the abuse occurred from the time the victim was between nine and eleven years old and he did not report it for approximately ten years. *Id.* at 1105-06. The appellant argued that the photographs were irrelevant and thus, inadmissible. *Id.* at 1107.

This Court stated that "a photograph is simply a type of demonstrative evidence," and "it, like all other types of evidence, is subject to general relevancy principles[,] namely that '[a]ll relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible.'" *Id.* (quoting Pa.R.E. 402). In finding the photographs depicting the victim as a child irrelevant, we explained,

> There are obvious parallels between the Commonwealth's seeking to establish through photographic proof what a homicide victim looked like around the time of his or her death, and the facts sub judice, in which the Commonwealth sought to show the victim's appearance near the time of the crimes. Just as such evidence is generally irrelevant in a homicide prosecution—at least in cases where the "life in being" element is not in question—so too were [the victim]'s childhood pictures irrelevant, as [the appellant] did not contest that [the victim] was actually a child at the times he testified that the abuse occurred. There was thus no need to prove to the jury what [the victim] looked like as a child, rendering the evidence irrelevant.

*Id.* at 1109. We therefore concluded that the trial court's decision to admit the photographs was error. *See id.* at 1107-11.

- 9 -

Nevertheless, we further concluded that the trial court's admission of these photographs was harmless error. ***See id.*** at 1110-11.

> [A]n erroneous ruling by a trial court on an evidentiary issue does not require us to grant relief where the error was harmless. The Commonwealth bears the burden of demonstrating harmless error. Harmless error exists where: (1) the error did not prejudice the defendant or the prejudice was de minimis; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

***Id.*** at 1110 (citation omitted).

In finding the trial court's error harmless, we reasoned that "the photographs were referenced briefly, and the prosecutor did not revisit or otherwise draw attention to the photographs following their introduction." ***Id.*** We further explained that "the jury was obviously aware of the fact that [the victim] was once a child, and it takes no great leap of imagination to imagine what a witness may have looked like as a child. This point further highlights the de minimis prejudice." ***Id.*** at 1111. We thus concluded that while the photographs were irrelevant, their use was limited, and … any prejudicial effect was de minimis." ***Id.*** at 1110-11.

The record reflects that the Commonwealth sought to introduce the photographs depicting M.M. and Ewing together to demonstrate that they spent a significant amount of time together and were comfortable around one another. N.T., 1/10/2023, at 157, 159. Additionally, the Commonwealth

- 10 -

sought to introduce the photograph of H.H. to demonstrate that he was similar in appearance to M.M. N.T., 1/11/2023, at 75. The record, however, further reflects that there was no dispute regarding the amount of time M.M. spent with Ewing or whether there were physical similarities between M.M. and H.H. There was ample testimony from both M.M. and his mother, who also testified at trial, that M.M. spent a significant amount of time with Ewing and that he enjoyed doing so. N.T., 1/10/2023, at 110-17, 169-77. Likewise, H.H.'s mother expressly testified that M.M. and H.H. looked alike as children. N.T., 1/11/2023, at 70. Thus, the record does not support the trial court's determination that the photographs were necessary to establish Ewing's modus operandi. Further, there was no need to show the jury that the victims looked like each other and were children when the abuse occurred. *See Vucich*, 194 A.3d at 1107-11. We therefore conclude that the photographs were irrelevant and inadmissible, and that the trial court abused its discretion in admitting them.

We agree, however, with the Commonwealth's assertion that the trial court's decision to admit the photographs was harmless error. *See* Commonwealth's Brief at 35-37. As in *Vucich*, the Commonwealth in this case briefly introduced each photograph, after which it then moved on to other lines of questioning and it did not subsequently revisit or otherwise draw attention to the photographs. *See* N.T., 1/10/2023, at 161-63; N.T., 1/11/2023, at 70-72, 80-81. Furthermore, as established above, the jury

heard extensive testimony relating to the closeknit relationship between M.M. and Ewing and the physical similarities between M.M. and H.H. Thus, not only was the admission of the three photographs at issue merely cumulative of other untainted, properly admitted evidence, but the prejudice to Ewing was de minimis. **See Vucich**, 194 A.3d at 1110-11. We therefore conclude that the trial court's admission of the three photographs was harmless error.

In his third and fourth issues, Ewing challenges the sufficiency of the evidence to sustain his convictions of fifteen counts of IDSI – complainant less than sixteen years of age and ten counts of indecent assault – complainant less than thirteen years of age, both of which relate to offenses Ewing committed against M.M. Ewing's Brief at 19-21.[4] For both crimes, Ewing asserts that M.M. testified that Ewing engaged in acts constituting those offenses more than twenty-five times per offense, but could only specify that "some" of those acts occurred before M.M. was thirteen and "some" after he turned thirteen. **Id.** Ewing contends that the testimony regarding M.M.'s age when the offenses occurred was not sufficiently specific to sustain his convictions of either offense on all counts, as M.M. did not specifically testify

_____

[4] We note that although Ewing's briefing of his sufficiency of the evidence claims is severely lacking in detail, development, and citation to pertinent authority, we are nevertheless able to discern his arguments and therefore decline to find waiver on that basis. **See** Ewing's Brief at 19-21; **see also Commonwealth v. Hardy**, 918 A.2d 766, 774 (Pa. Super. 2007) (declining to find waiver of issues that were underdeveloped or failed to comply with the Pennsylvania Rules of Appellate Procedure where the arguments could reasonably be discerned from the appellate brief).

that Ewing engaged in acts constituting IDSI at least fifteen times after M.M. turned thirteen or that Ewing engaged in acts constituting indecent assault at least ten times before M.M. turned thirteen. *Id.*

"A claim challenging the sufficiency of the evidence is a question of law." ***Commonwealth v. Widmer***, 744 A.2d 745, 751 (Pa. 2000). "We review claims regarding the sufficiency of the evidence by considering whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." ***Commonwealth v. Miller***, 172 A.3d 632, 640 (Pa. Super. 2017) (quotation marks and citation omitted). Furthermore, "a conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence." *Id.* "In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder." *Id.*

> A person commits a felony of the first degree when the person engages in deviate sexual intercourse with a complainant … who is less than 16 years of age and the person is four or more years older than the complainant and the complainant and person are not married to each other.

18 Pa.C.S. § 3123(a)(7). The term "deviate sexual intercourse" includes "[s]exual intercourse per os [(oral)] or per anus between human beings[.]" *Id.* § 3101.

- 13 -

> A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and … the complainant is less than 13 years of age.

*Id.* § 3126(a)(7).  The term "[i]ndecent contact" includes "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." *Id.* § 3101.

Ewing does not dispute that the Commonwealth presented evidence that he committed acts upon M.M. constituting deviate sexual intercourse and indecent contact. *See* Ewing's Brief at 19-21.  Rather, Ewing argues that the Commonwealth failed to present evidence of the victim's age when he committed each offense. *See id.*; *see also* 18 Pa.C.S. §§ 3123(a)(7), 3126(a)(7).

With respect to Ewing's conviction of fifteen counts of IDSI – complainant less than sixteen years of age, the record contains sufficient evidence to sustain these convictions, as there is no dispute that every act of sexual abuse M.M. endured occurred when he was less than sixteen years old. *See* Ewing's Brief at 19-21.  Indeed, M.M. testified at trial that Ewing forced M.M. to perform oral intercourse on Ewing "in excess of 20, 25 times[,]" that Ewing also performed oral intercourse on M.M. "in excess of 20, 30 times[,]" and that all of this occurred before M.M. was sixteen years old.  N.T., 1/10/2023, at 124-27.  Contrary to Ewing's claim, there is no minimum age requirement for IDSI – complainant less than sixteen years of age; as the

- 14 -

plain language of the statute reflects, the complainant simply cannot be sixteen years of age or older at the time of the offense. We therefore conclude the evidence was sufficient to sustain Ewing's convictions on fifteen counts of IDSI – complainant less than sixteen years of age.

Regarding Ewing's conviction of ten counts of indecent assault – complainant less than 13 years of age, M.M. testified that Ewing groped his penis over his clothes "[i]n excess of 15 times" and under his clothes "[i]n excess of 25 times" and that this first occurred when M.M was around 11 years old and last occurred when M.M. was "[a]round the age of 15." *Id.* at 121-22. M.M., however, never specified the number of times these instances of indecent contact occurred before he turned 13 years old. *See id.* at 118-22.

This Court has held that "[t]he trier of fact cannot base a conviction on conjecture and speculation and a verdict which is premised on suspicion will fail even under the limited scrutiny of appellate review." *Commonwealth v. Spence*, 290 A.3d 301, 309 (Pa. Super. 2023). In this case, with no testimony regarding how many times Ewing engaged in indecent contact with M.M. before M.M. was thirteen years old, the jury was left to speculate when it convicted Ewing on ten counts of indecent assault – complainant less than 13 years of age. Nevertheless, the record does support the jury's conclusion that Ewing had indecent contact with M.M. before M.M. turned thirteen on at least one occasion, as M.M. expressly testified that such contact occurred starting when he was eleven years old. N.T., 1/10/2023, at 121-22.

Upholding the convictions on any additional counts of this offense would require us to improperly speculate, as the jury did in this case, as to the total number of times Ewing had indecent contact with M.M before M.M. turned thirteen years old.[5]  *See Spence*, 290 A.3d at 309.  Accordingly, we vacate nine of Ewing's ten convictions of indecent assault – complainant less than thirteen years of age.

The trial court ordered Ewing's sentences on several of his convictions of indecent assault – complainant less than thirteen years of age to be served consecutive to his sentences on his other convictions.  *See* Amended Sentencing Order, 6/27/2023, at 47-48.  Thus, our decision to vacate nine of his convictions disrupts the trial court's sentencing scheme, and we must therefore remand for resentencing.  *See Commonwealth v. McCamey*, 154

_____

[5]  We recognize, as our concurring and dissenting colleague does, that cases of this Court have held the Commonwealth does not need to prove the exact date an offense or offenses occurred when the offense involves a child victim or a continuous course of criminal conduct.  *See* Concurring/Dissenting Mem. at 2-3; *Commonwealth v. G.D.M., Sr.*, 926 A.2d 984, 990 (Pa. Super. 2007); *Commonwealth v. Groff*, 548 A.2d 1237, 1242 (Pa. Super. 1988). No part of our decision is intended to stray from this authority, as we do not conclude that the evidence was insufficient to sustain nine of Ewing's convictions of indecent assault – complainant less than 13 years of age because the Commonwealth failed to prove the exact date those offenses occurred.  Instead, we conclude that the evidence was not sufficient to sustain those convictions because the Commonwealth failed to establish the number of times Ewing had indecent contact with M.M. before he turned 13, as the victim's age is an element of the offense that the Commonwealth must prove. *See* 18 Pa.C.S. § 3126(a)(7).  Without such evidence, the jury's conclusion that it happened on ten occasions, as opposed to three, seven, or fifteen occasions, was at best a guess—nothing more than speculation. *See Spence*, 290 A.3d at 309.

A.3d 352, 359 (Pa. Super. 2017) (stating that resentencing is required where an order from the Superior Court disrupts the trial court's sentencing scheme). Furthermore, because we are remanding for resentencing, we need not address Ewing's final issue, which is a challenge to the discretionary aspects of his sentence, as it is now moot.

Based on the foregoing, we vacate nine of Ewing's ten convictions of indecent assault – complainant less than 13 years of age and affirm the remainder of his convictions. We remand this matter to the trial court for resentencing. We affirm in all other respects.

Convictions affirmed in part and reversed in part. Judgment of sentence vacated. Case remanded. Jurisdiction relinquished.

Judge Kunselman files a Concurring Memorandum, which Judge Sullivan joins.

Judge Sullivan files a Concurring and Dissenting Memorandum.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 7/11/2025