J-S55044-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| IN RE: ADOPTION OF K.H. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: S.H. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 920 WDA 2019 |

Appeal from the Decree Dated May 16, 2019
In the Court of Common Pleas of McKean County Orphans' Court at
No(s): 42-18-0294

BEFORE: MURRAY, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.: FILED NOVEMBER 15, 2019

Appellant, S.H. ("Father"), appeals from the decree dated May 16, 2019, and entered May 20, 2019, involuntarily terminating his parental rights to his male child, K.H. ("Child"), born in August 2016. We affirm.[1]

We summarize the facts and procedural history underlying this appeal as follows[2]. See Trial Court Opinion, 5/21/19, at 1-4. Child was born in August 2016 to Mother and Father ("Parents"). The family came to the

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] That same day, the court terminated the parental rights of A.T. ("Mother"). Mother has not appealed and is not a party to this appeal. On this docket, Mother's counsel has filed a motion to withdraw as counsel. Motion to Withdraw as Counsel, 9/18/19, at 1-2. The motion averred that counsel had been appointed to represent Mother in the trial court, and that counsel had not been able to reach Mother since the entry of the termination decree. Id. As Mother is not a party to this appeal, we deny counsel's request.

[2] Father stipulated to the court's findings of fact. See Father's Brief at 7.

attention of the McKean County Children and Youth Services ("CYS") in June 2017, after receiving a report that Mother was homeless and using drugs. CYS filed an emergency custody petition on June 21, 2017, which was granted. After Parents acknowledged that they were without appropriate housing, Child was placed in foster care.

Parents were involved in an abusive relationship. Mother sought several protection from abuse ("PFA") orders against Father, but returned to him each time. Parents suffer from drug and alcohol addiction. Specifically, Father has alcohol abuse issues and anger issues, and has not accepted any treatment options. Finally, Father has an extensive criminal history with convictions for assault, parole violations, and PFA violations.

Child was placed with C.D. and J.D. ("Foster Parents"), and has resided with them for almost two years. In addition to Child, Foster Parents' biological children and one foster child reside there. Child is doing very well in the home; he attends medical appointments and is socially involved in daycare, in the family, and the community. Child has made strides in his verbal development and refers to Foster Parents as "Dad" or "Daddy" and "Mommy" or "Mom." Foster Parents desire to adopt Child and love Child, and are willing to allow contact with Child and Mother, as well as with Child's biological half-sister A.H.[3] Indeed, Foster Parents arrange visits between Child and A.H. every other weekend.

_____

[3] A.H. is not in Mother's care, and is placed with her paternal grandparents. See N.T., 4/8/19, at 89.

Father was incarcerated January 18, 2018, through January 19, 2018; March 20, 2018, through March 21, 2018; April 25, 2018, through May 20, 2018; September 11, 2018, through November 16, 2018; and February 28, 2019, through March 3, 2019.[4] Since Child's placement, Father has not visited with Child since his release from incarceration. Over the last two years, Child has seen Father only a few times, and Father has only showed an interest in visiting with Child while he has been incarcerated. During those visits, Father has been verbally abusive to Foster Parents and other household members, including Child. At Father's sole visit, Father played with child but complained about CYS, argued that there was no reason to keep Child from his care, and complained that he should not have to bring supplies such as diapers to the visits. After visits with Father, Child has acted out. Child does not speak of Father, and Foster Parents are not willing to allow contact between Father and Child.

Father has been difficult to contact because of changing phone numbers and residences. Father ignored attempts to contact him for visits, and has attended only a few of the dependency proceedings. Father was ordered to complete a mental health and drug and alcohol evaluation; follow through with any recommended treatment; provide releases; provide urine samples for drug screens; and obtain appropriate housing. Father eventually provided releases but did not comply with his other goals.

_____

[4] See N.T., 4/8/19, at 58.

- 3 -

On November 13, 2018, CYS filed a petition for the involuntary termination of Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).

The hearing was held on April 8, 2019. Father was represented by counsel, who was present and testified. Father did not appear at the hearing and did not testify on his own behalf. Mother did not appear at the hearing and did not testify on her own behalf. Mother was represented by counsel, who was present. CYS presented the testimony of C.D., foster father; Chelsie Lekanka, CYS aide; Emily Truman, CYS ongoing caseworker; Heather Morey, former McKean County caseworker and intake investigator familiar with Child; Jonathan Braeger, CYS supervisor of the ongoing caseworkers; Assistant Police Chief, City of Bradford Police, Michael Ward; and David Stahlman, the assistant warden of the McKean County Jail. Additionally, Tania Geist, Mother's mental therapist from the Guidance Center, testified. Child was represented by Christopher Martini, Esquire, as legal counsel.

During the hearing, CYS moved to introduce Agency Exhibits 4-9, which were Father's criminal dockets. Father's counsel objected, but the exhibits were nevertheless admitted.[5] See N.T., 4/8/19, at 29-35. The exhibits were

_____

[5] Exhibit 4 was Father's August 2012 guilty plea to possession of drug paraphernalia; Exhibit 5 was Father's February 2012 conviction for possession with intent to deliver cocaine; Exhibit 6 was Father's June 2005 guilty plea to simple assault; Exhibit 7 was Father's October 2000 guilty plea to simple assault, theft by unlawful taking, and reckless endangerment of another person; Exhibit 8 was Father's September 1999 guilty plea to theft of leased

certified by the Prothonotary and Clerk of the McKean County Court of Common Pleas. Id. Father did not object to the admission of certified docket entries regarding his PFA violations, summary convictions for harassment and disorderly conduct involving Mother. Id. In a decree dated May 16, 2019 and entered on May 20, 2019, the court terminated Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).

Father timely filed a notice of appeal and statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[6]

On appeal, Father raises the following issues for our review:

I. Whether the court erred in granting [CYS'] petition for involuntary termination of parental rights where Father made diligent efforts towards the assumption of full parental responsibilities by having provided adequate care for Child prior to his incarceration in June 2017?

II. Whether the court erred in granting [CYS'] petition for involuntary termination of parental rights where Father showed devotion toward and had a bond with Child where Father was a substantial part of Child's life prior to a finding of dependency in 2017 and where Father continued to execute visits with Child after a finding of dependency?

III. Whether the court erred in admitting and considering Father's prior criminal convictions because they were irrelevant where all of Father's criminal convictions occurred prior to the Child's birth and did not involve the abuse or neglect of Children?

See Father's Brief at 4-5 (unnecessary capitalization and answers omitted).

_____

property; and Exhibit 9 was Father's December 1999 guilty plea to disorderly conduct.

[6] The trial court entered its opinion and decree on May 21, 2019.

Initially, we note that Father has withdrawn his arguments regarding his first two issues and has not briefed them on appeal.[7] See Father's Brief at 8-11. Additionally, Father does not challenge the court's Section 2511(a) or Section 2511(b) findings, but, instead, argues solely that his criminal convictions should not have been admitted because they were irrelevant, remote in time, and did not concern child abuse or neglect. See Father's Brief at 8-15.

We review cases involving the termination of parental rights according to the following standards.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

In re T.S.M., 71 A.3d 251, 267 (Pa. 2013) (internal citations and quotations omitted).

Termination requires a bifurcated analysis:

---

[7] See, e.g., Pa.R.A.P. 2119(a)-(f); Lackner v. Glosser, 892 A.2d 21, 29-30 (Pa. Super. 2006) (citations omitted) ("[a]ppellate arguments which fail to adhere to these rules may be considered waived, and arguments which are not appropriately developed are waived. Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention.")

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

In re L.M., 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted). As we need only agree with the trial court's decision as to any one subsection to affirm the termination, we focus our analysis on subsections (a)(2) and (b). See In re B.L.W., 843 A.2d 380, 384 (Pa. Super. 2004).

The relevant subsections of 23 Pa.C.S.A. § 2511 provide:

(a) General rule.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

* * *

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

* * *

(b) Other considerations.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings,

income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

To satisfy the requirements of Section 2511(a)(2), the moving party must prove "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." See In Interest of Lilley, 719 A.2d 327, 330 (Pa. Super. 1998). The grounds for termination are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied. In re Z.P., 994 A.2d 1108, 1117 (Pa. Super. 2010). Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties. Id.

As noted above, Father does not challenge the court's Section 2511(a) findings but, even had he preserved a challenge, it would have been meritless. Here, Father was incarcerated for much of Child's life. He was provided with objectives to complete in order to be reunified with Child, but Father never completed those objectives, which included being ordered to complete a mental health and drug and alcohol evaluation; follow through with any recommended treatment; provide releases; provide urine samples for drug screens; and obtain appropriate housing. Father did not remain in contact with CYS and did not provide contact information so that the Agency could

reach him. Father's only contact with Child was while incarcerated, and during those visits, he was verbally abusive to Child and Foster Parents. Additionally, Father's repeated incarceration, parole violations, and convictions for crimes are further proof that the cause of Child's placement cannot or will not be remedied.

Accordingly, we discern no error in the trial court's finding that competent, clear and convincing evidence supported the termination of Father's parental rights pursuant to Section 2511(a)(2), based upon Father's continued incapacity – namely, his inability to complete a single objective or remain in contact with Child – that resulted in Child being without essential parental care, the cause of which "cannot or will not be remedied." See Lilley, 719 A.2d at 330; Z.P., 994 A.2d at 1117.

Next, we must consider whether Child's needs and welfare will be met by termination pursuant to Subsection (b). See Z.P., 994 A.2d at 1121. "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." Id. The court is not required to use expert testimony, and social workers and caseworkers may offer evaluations as well. Id. Ultimately, the concern is the needs and welfare of a child. Id.

We have stated:

[b]efore granting a petition to terminate parental rights, it is imperative that a trial court carefully consider the intangible dimension of the needs and welfare of a child—the love, comfort, security, and closeness—entailed in a parent-child relationship, as

well as the tangible dimension. Continuity of the relationships is also important to a child, for whom severance of close parental ties is usually extremely painful. The trial court, in considering what situation would best serve the child[ren]'s needs and welfare, must examine the status of the natural parental bond to consider whether terminating the natural parents' rights would destroy something in existence that is necessary and beneficial.

Z.P., 994 A.2d at 1121 (quoting In re C.S., 761 A.2d 1197, 1202 (Pa. Super. 2000)). The trial court may equally emphasize the safety needs of the child and may consider intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. See In re N.A.M., 33 A.3d 95, 103 (Pa. Super. 2011). Additionally, the court may emphasize the safety needs of a child. See In re K.Z.S., 946 A.2d 753, 763 (Pa. Super. 2008). Where there is no evidence of a bond between the parent and child, it is reasonable to infer that no bond exists. Id. "[A] parent's basic constitutional right to the custody and rearing of . . . her child is converted, upon the failure to fulfill . . . her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." In re B.,N.M., 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted).

Here, the record does not support the existence of any testimony or evidence that supports a bond between Father and Child. Father and Child visited once while Father was incarcerated. While Child refers to his biological mother as "Mommy A.," and his foster parents as "Mommy" and "Daddy," Child does not refer to Father by any name. Child does not ask about Father at all. On the contrary, Child is thriving in his foster placement and has a

strong and loving bond with his foster parents. He has had a stable home in his foster placement, and it is in Child's best interests that he remains there.

We discern no abuse of discretion in the trial court's conclusion that Child's needs and welfare are best served by termination. Accordingly, clear and convincing evidence supports the trial court's termination of Father's parental rights under Section 2511(a)(2) as well as the Section 2511(b) findings that no bond existed between Father and Child, and that adoption would best serve Child's needs and welfare. See Z.P., 994 A.2d at 1126-27; K.Z.S., 946 A.2d at 763.

Finally, Father argues that the trial court erred in admitting evidence of his criminal convictions, specifically, Agency Exhibits 4-9. See Father's Brief at 12. Father argues that the evidence was irrelevant, because it did not involve the abuse and neglect of children, and that the convictions occurred prior to Child's birth. Id. at 12-15.

Absent an abuse of discretion, a reviewing court will not disturb the trial court's rulings on the admission or exclusion of evidence in a proceeding for termination of parental rights. In re A.J.H., 169 A.3d 1078, 1167 (Pa. 2017).

With regard to the admission of evidence,

> the trial court must weigh the relevant and probative value of the evidence against the prejudicial impact of that evidence. Evidence is relevant if it logically tends to establish a material fact in the case or tends to support a reasonable inference regarding a material fact. Although a court may find that evidence is relevant, the court may nevertheless conclude that such evidence is inadmissible on account of its prejudicial impact.

*Commonwealth v. Vucich*, 194 A.3d 1103, 1106 (Pa. Super. 2018), appeal denied, 199 A.3d 885 (Pa. 2018).

Here, the convictions were relevant to demonstrate Father's long criminal history and incapacity to parent. The convictions were offered to demonstrate that drug, alcohol, and mental health issues had long been problems for Father, and that he had been ordered to address the issues in the past, and had not. The trial court recognized that the exhibits were remote in time and of limited probative value and "would not carry the day." See N.T., 4/8/19, at 31-32. Father did not object to more recent convictions, including harassment and PFA violations, offered for the same reasons. In total, Father's extensive criminal history was relevant to show the full history of his issues, and his failure to address them, and were specifically relevant to the court's Section 2511(a)(2) inquiry. Additionally, the convictions were not presented in a vacuum, but were accompanied by testimony from caseworkers, a jail warden, and an assistant police chief. Therefore, the court did not commit an abuse of discretion in admitting the evidence. *A.J.R.-H.*, 188 A.3d at 1167.

Accordingly, we affirm the trial court decree, and deny Mother's counsel's motion to withdraw as counsel.

Decree affirmed. Mother's counsel's motion to withdraw as counsel denied.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/15/2019</u>