J-S56017-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: R.G., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.L.L. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1047 EDA 2019 |

Appeal from the Order Entered March 11, 2019
In the Court of Common Pleas of Philadelphia County Domestic Relations
at No(s):  CP-51-DP-0002190-2018

BEFORE:  PANELLA, P.J., OLSON, J., and NICHOLS, J.

MEMORANDUM BY OLSON, J.:                    **FILED FEBRUARY 12, 2020**

M.L.L.[1] appeals from the order entered by the Court of Common Pleas of Philadelphia County on March 11, 2019, finding that the minor daughter of his paramour, R.G. ("Child") (a female born in March 2007), was a victim of child abuse under the Child Protective Services Law ("CPSL"), 23 Pa.C.S. § 6303.[2]  After careful review, we are constrained to vacate and remand for further proceedings in accordance with this memorandum.

The trial court discussed the factual and procedural history of the case as follows:

---

[1] The trial court opinion refers to M.L.L. as "Stepfather," despite the fact that he is not married to Mother.

[2] On that same day, the court entered an identical order as to R.G. ("Mother"). Mother separately filed a notice of appeal, docketed at 1069 EDA 2019. Accordingly, we address her issues in a separate memorandum.

On August 24, 2018, the Department of Human Services ("DHS") received a Child Protective Services ("CPS") report alleging that Child disclosed that [M.L.L.] had sexually molested Child. Specifically, Child disclosed to [DHS] that on more than one occasion between the years of 2017-2018[ M.L.L.] had entered Child's bedroom while she was sleeping and sexually assaulted Child. On August 24, 201[8], DHS advised Mother of these allegations and advised Mother that [M.L.L.] be kept away from Child.

On August 30, 2018, the Philadelphia Police Department's Special Victims Unit ("SVU") conducted a forensic interview during which Child disclosed that she was sexually assaulted by [M.L.L.]. DHS filed the underlying Petition for Dependency on October 2, 2018, which was granted[.] Child was adjudicated dependent on December 13, 2018[,] following a hearing. Thereafter, on March 11, 2019, the [c]ourt held a hearing to determine if Mother and [M.L.L.] were perpetrators of Child abuse. Mother and [M.L.L.] were present at the hearing and represented by counsel.

Trial Court Opinion, 7/9/19, at 1-2 (citations omitted).

At the hearing, counsel for DHS presented the testimony of Sharina Johnson, DHS social worker; Jillian Shainman, the Philadelphia Children's Alliance forensic interviewer; Sydelle Chase, Community Umbrella Agency ("CUA") case manager; and Child, who testified *in camera*.[3]

Ms. Johnson testified that she has worked at DHS for almost 12 years, and has been in the Sex Abuse Investigation department for almost five years. *See* N.T., 3/11/19, at 9-10. She conducts about 100 investigations a year and has conducted a little over 500 investigations in total. *Id.* at 10. The

---

[3] The transcript of Child's testimony was unsealed after motion by M.L.L.'s counsel and by order of the trial court. *See* Order, 9/6/19, at 1.

instant matter became known to DHS following allegations of sexual abuse by Child. *Id.* DHS received a CPS report on August 24, 2018.[4] *Id.* at 10-11.

Ms. Johnson testified that the report was generated after Child disclosed to a cousin that M.L.L. had removed Child's underwear, penetrated Child's vagina and anus with his penis, and had oral contact with Child's vaginal area. *Id.* at 12. The cousin in turn informed Mother, who brought Child to Children's Hospital of Philadelphia ("CHOP"). *Id.* Hotline caseworkers went to interview Child before the report was assigned to Ms. Johnson. *Id.* She went to the family's home, but found they were not home. *Id.* at 12-14. Ms. Johnson did not make contact with the family until August 28, 2018, when she met with Mother and her three children. *Id.* at 14-15.

Ms. Johnson testified that she informed Mother of the allegations and what Child had disclosed to Ms. Johnson during the interview. *Id.* at 13-15. In response, Mother said, "She's not going to say it happened and she's not going to say it didn't happen." *Id.* at 15. Ms. Johnson also informed Mother that there was to be no contact between M.L.L. and the children. *Id* at 15-16. Ms. Johnson testified that she spoke to Child and her siblings,[5] and that Child identified M.L.L. as the perpetrator and that he had put his penis in her

---

[4] M.L.L.'s counsel objected to the introduction of the facts the report alleged as hearsay, and because no tender years motion was filed or litigated. *Id.* at 11. After counsel for DHS argued that she was inquiring about the narrative of the report, not the actual statements, the court overruled the objection. *Id.* at 11-12.

[5] Father's counsel made a standing objection, which was overruled. *Id.* at 16-17.

anus and his mouth on her vagina, and that this abuse occurred between eight and ten times over the course of several years. *Id.* at 17. Child also stated that Mother knew what was occurring. *Id.* Child described the addresses where the abuse occurred, and where the family had been living in a boarding room, and stated that one of her sisters was asleep next to her at the time. *Id.* at 17-18. Neither sister disclosed any additional information to Ms. Johnson. *Id.* at 18-19.

Ms. Johnson asked Mother for M.L.L.'s contact information and, while she initially demurred, she eventually provided his phone number. *Id.* at 19. A few minutes after Ms. Johnson left the home, M.L.L. called her via cell phone. *Id.* Ms. Johnson informed him of "his right[] to speak to [her] without an attorney present" and of the reported allegations. *Id.* M.L.L. denied everything, informed Ms. Johnson that Child was coached by a 12-year-old cousin because she did not want to come home that day, and accused Child of lying. *Id.* at 19-20. M.L.L. claimed that Child lied about other incidents at school. *Id.* at 20.

Ms. Johnson testified that Child attended an initial interview at the Philadelphia Children's Alliance ("PCA") on August 30, 2018. *Id.* at 21-22. Present at the interview were Ms. Johnson, a police officer, and Mother. *Id.* at 22. Child was interviewed and made a full disclosure, in similar detail to

what she told Ms. Johnson.[6] *Id.* at 22. Child also stated that M.L.L. put baby oil on her when he was finished. *Id.*

Following these interviews, services were implemented for the family, and PCA recommended therapy for Child. *Id.* at 21. Ms. Johnson attempted to have a conversation with Mother, but it did not go well and Mother did not provide a supporting statement for Child. *Id.* at 23. Mother was not compliant, refused phone calls, and stopped engaging with PCA. *Id.* at 21. Ms. Johnson again attempted to reach out to Mother to bring Child in for services, but Mother provided excuses. *Id.* at 24.

Ms. Johnson received additional information that M.L.L. was once more residing in the home. *Id.* at 24-25. Ms. Johnson contacted Child at school and, while Child initially denied that M.L.L. was living there, she eventually admitted that she was told by Mother not to inform DHS. *Id.* at 24-25. Accordingly, DHS obtained an order for protective custody ("OPC") of Child and her two siblings on September 25, 2018. *Id.* At the younger children's daycare, Ms. Johnson learned M.L.L. was bringing the children to and from daycare in violation of the safety plan. *Id.* at 26. After the children were removed from the home, M.L.L. called Ms. Johnson ten times and yelled at her, calling Child a liar. *Id.* at 27. M.L.L. stated that if he did anything to Child, DHS would know based on his penis size. *Id.* at 27.

---

[6] M.L.L.'s attorney lodged an objection. *Id.* at 22.

Ms. Johnson testified that the report was indicated as to M.L.L. because Child provided a clear, consistent disclosure of abuse, and there was no reason to believe she would make anything up. *Id.* at 27. The report was indicated as to Mother because she had knowledge of the abuse and continued to allow M.L.L. access, despite the fact that she signed a safety plan. *Id.* at 27-28.

Jillian Shainman, a forensic interviewer at PCA, testified over M.L.L.'s objection. *Id.* at 53-54.[7] She described her job as "speaking with children

---

[7] The exchange was as follows:

MS. ROGERS: And, Your Honor, I would just ask for an offer of proof.

THE COURT: It's the statement given by the child, I presume, right?

MR. MCLAUGHLIN: Yes, Your Honor.

THE COURT: You can call her.

MS. ROGERS: Again, Your Honor, there's been no tender years motion filed in this matter, nor has one been litigated, and I would—

THE COURT: The child's here.

MS. ROGERS: -- object on --

MR. MCLAUGHLIN: I'm asking to bring the PCA interviewer in.

THE COURT: I understand that. You're calling the child, though?

MR. MCLAUGHLIN: Yes.

THE COURT: Go ahead.

about allegations of abuse in a developmentally appropriate and forensically sound manner." *Id.* at 54. Ms. Shainman described her work experience and the process of interviewing a child before testifying regarding her interview with Child, conducted on August 30, 2018. *Id.* at 55-56.

During the interview, Child was alone in the room with Ms. Shainman; observing in a separate room were Police Officer Claire Duckworth and Ms. Johnson. *Id.* at 56. Ms. Shainman did not speak to Mother prior to the interview but did review Child's allegations. *Id.* at 57. Child offered information consistent with the allegations in the reports, namely, that M.L.L. put his penis in her butt more than once, put his mouth on her vagina more than once, put his penis on her feet, and touched and licked Child's breasts. *Id.* at 57-58. Child was "calm and friendly" throughout the interview, with a neutral affect that is not unusual for children being interviewed. *Id.* at 58. Nothing about Child's demeanor caused Ms. Shainman to question her truthfulness. *Id.* at 59.

Following the interview, Ms. Shainman discussed the interview with Mother. *Id.* at 58. Mother repeatedly said that she believed Child, but repeatedly discussed concerns that Child's cousin might have coached her, as well as concerns that M.L.L. would be arrested. *Id.* at 59.

---

N.T., 3/11/19, at 53. M.L.L.'s counsel repeated her "standing objection to the hearsay statements of the child." *Id.* at 54.

Sydelle Chase, CUA case manager, testified that Child is currently placed in non-kinship foster care through New Foundations. *Id.* at 64. Mother's single case plan ("SCP") objectives were to comply with court orders, complete a parenting capacity evaluation ("PCE"), comply with the stay-away order pertaining to the children, attend a Behavioral Health System ("BHS") evaluation and follow through with recommendations, and to attend and participate in the Sage program. *Id.* at 65. As of the date of the hearing, Mother did not complete a BHS or PCE evaluation, and did not start at Sage. *Id.* Child was on the waiting list for therapy. *Id.* at 66.

Child testified *in camera* at the hearing. *See* N.T., 3/11/19, *In Camera*, at 1-26. At that time, she was 11 years old and in sixth grade. *Id.* at 4. Child stated that the reason she was in court was to "see if [she were] going home or not," and stated that the most important thing was to tell the truth. *Id.* at 5.

Child testified that she knew M.L.L. since she was very young and calls him "DJ". *Id.* at 5. She could not remember how many homes she had lived in, but it was "a lot." *Id.* Child did remember the name of the street she lived on when the abuse first occurred. *Id.* at 6-7. At that home, she shared a room with her younger sister. *Id.* at 7. At that time, M.L.L. came into her room, pulled her pants and underwear down, and put his penis in her anus. *Id.* at 7-8. At other times, M.L.L. put his tongue on and his fingers in her vagina. *Id.* at 8. The abuse always occurred on her bed, sometimes while her younger sister was sleeping next to her. *Id.* at 8. After M.L.L. was

finished, he would put baby oil on her anus and vagina. *Id.* at 9, 14-16. Child testified that the abuse occurred more than once but she could not remember how many times, although she had previously given testimony at a preliminary hearing. *Id.* at 11-12. Child testified that the abuse occurred in multiple homes and locations. *Id.* at 13-17.

Child testified that she first told her 12-year-old cousin about the abuse when sleeping over at her aunt's house. *Id.* at 9-10. After the disclosure, Child's cousin told her mother, Child's aunt. *Id.* at 10. Child's aunt asked her if she wanted to call the police immediately, or wait until the next day to go to the hospital. *Id.* at 11. Child chose to wait to go to the hospital. *Id.* Child told her mother, as well, but Mother stated that she did not believe her and that she had been coached. *Id.* at 12. After her disclosure, Child saw M.L.L. again at her mother's house. *Id.* at 12-13.

Child testified that she did not tell Mother about the bad touching before because she was afraid of Mother not believing her. *Id.* at 19-20. After Child finally told Mother, Mother took her to the hospital the next day. *Id.* at 21. However, Child stated that Mother told her that if anyone asked if M.L.L. were still living with the family, to lie and say "no." *Id.* at 21.

M.L.L. did not testify, but instead offered, by way of stipulation, a portion of Child's medical records indicating that Child's hymen was intact and that she was lacking signs of trauma. *See* N.T., 3/11/19, at 73-74. M.L.L. acknowledged that the absence of evidence of acute injury is not dispositive to the issue of whether or not abuse occurred. *Id.*

Following the hearing, the court entered a permanency review order finding that Child was a victim of child abuse pursuant to 23 Pa.C.S. § 6303(b.1)(4) as to M.L.L., and 23 Pa.C.S. § 6303(b.1)(6) as to Mother.

M.L.L. timely filed a notice of appeal and statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

On appeal, M.L.L. raises the following issues for our review:

1. Whether the trial court committed an error of law and abuse of discretion by finding child abuse as to [M.L.L.], where DHS failed to prove by clear and convincing evidence that [Child] was abused, as defined by 23 Pa.C.S. § 6303?

2. Whether the trial court committed an error of law and abuse of discretion in relying on inadmissible hearsay evidence in its ruling as to child abuse[?]

M.L.L.'s Brief at 5 (some capitalization omitted).

The standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citation omitted). The admission of evidence is within the purview of the trial court's discretion. *See In re C.M.T.*, 861 A.2d 348, 355 (Pa. Super. 2004).

While dependency proceedings are governed by the Juvenile Act, 42 Pa.C.S. §§ 6301–6375, the [CPSL] controls determinations

- 10 -

regarding findings of child abuse, which the juvenile courts must find by clear and convincing evidence. ***See In the Interest of J.R.W.***, 631 A.2d 1019 (Pa. Super. 1993). As the Supreme Court explained in ***In the Interest of L.Z.***, [111 A.3d 1164, 1176 (Pa. 2015)], "[as] part of [a] dependency adjudication, a court may find a parent to be the perpetrator of child abuse," as defined by the CPSL.

***In The Interest of T.G.***, 208 A.3d 487, 490 (Pa. Super. 2019).

With regard to findings of child abuse,

[t]he [CPSL] defines "child abuse" as "intentionally, knowingly or recklessly ... [c]ausing sexual abuse or exploitation of a child through any act or failure to act." 23 Pa.C.S. § 6303(b.1)(4). "Sexual abuse or exploitation" is defined as "[t]he employment, use, persuasion, inducement, enticement or coercion of a child to engage in or assist another individual to engage in sexually explicit conduct, which includes ... [a]ctual or simulated sexual activity or nudity for the purpose of sexual stimulation or gratification of any individual." 23 Pa.C.S. § 6303(a). A finding of abuse must be supported by clear and convincing evidence*. **In Interest of J.R.W.***, [631 A.2d 1019, 1024 (Pa. Super. 1993)].

***Interest of I.R.-R.***, 208 A.3d 514, 520 (Pa. Super. 2019). Further, "[i]n cases of child abuse, a court's finding as to the identity of the abusers need only be established by *prima facie* evidence that the abuse normally would not have occurred except by reason of acts or omissions of the caretakers." ***In re R.P.***, 957 A.2d 1205, 1217–1218 (Pa. Super. 2008) (some citations omitted).

With regard to the admission of evidence,

the trial court must weigh the relevant and probative value of the evidence against the prejudicial impact of that evidence. Evidence is relevant if it logically tends to establish a material fact in the case or tends to support a reasonable inference regarding a material fact. Although a court may find that evidence is relevant, the court may nevertheless conclude that such evidence is inadmissible on account of its prejudicial impact.

- 11 -

*Commonwealth v. Vucich*, 194 A.3d 1103, 1106 (Pa. Super. 2018).

For ease of analysis, we address M.L.L.'s hearsay arguments first. *See* M.L.L.'s Brief at 14. M.L.L. argues that the court based its finding of child abuse on inadmissible hearsay. *Id.* There are two categories of hearsay to which M.L.L. objected and now challenges.

First, M.L.L. challenges the admission of the CPS report and the testimony of Ms. Johnson and Ms. Shainman regarding the allegations contained within the report. *Id*. M.L.L. contends that the allegations were offered for the truth of the matter asserted and were highly prejudicial, as they were based upon an anonymous source and upon Child's out-of-court statements. *Id.* at 14-15. M.L.L. contends that the court erred in relying upon the CPS report and the testimony of Ms. Johnson and Ms. Shainman, insofar as the witnesses testified regarding Child's out-of-court statements, pursuant to the Pennsylvania Supreme Court's opinion in *In re A.J.R.-H. See In re A.J.R.-H.*, 188 A.3d 1157, 1176 (Pa. 2018) (where exhibits in a termination matter were not admissible under the business records hearsay exception without a proper foundation for admission, their admission was not harmless, and the "right for any reason" doctrine did not apply to termination matters where the court based many of its findings of fact on the inadmissible exhibits).

Second, M.L.L. argues that various out-of-court statements made by Child were inadmissible because none of the exceptions to the hearsay rule identified in Pa.R.E. 803 applied. Additionally, M.L.L. asserts that Child's out-

of-court statements as testified to by Ms. Johnson and Ms. Shainman were inadmissible under 42 Pa.C.S. § 5986, as no motion was made or *in camera* proceeding held pursuant to the requirements of Pennsylvania's Tender Years Hearsay Act. *Id.* at 14-15.

We first address the admission of the CPS report. At the hearing, M.L.L. objected to the admission of the CPS report as inadmissible hearsay.[8] *See* N.T., 3/11/19, at 10-12. On appeal, M.L.L. argues that the CPS report and related testimony were inadmissible hearsay, as the allegations in the CPS report were based upon anonymous sources and the Child's out-of-court statements. *Id.*

"Hearsay" is "a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c). "Hearsay is not admissible except as provided by [the Pennsylvania Rules of Evidence], by other rules prescribed by the Pennsylvania Supreme Court, or by statute." Pa.R.E. 802.

---

[8] M.L.L. did not specifically mention this issue in his concise statement of errors complained of on appeal. *See Krebs v. United Refining Company of Pennsylvania*, 893 A.2d 776, 797 (Pa. Super. 2006) (holding that an appellant waives issues that are not raised in both his concise statement of errors complained of on appeal and the statement of questions involved in his brief on appeal). However, we decline to find waiver in this instance as M.L.L. preserved his issue by challenging, generally, the admission of the hearsay statements.

In dependency matters, reports such as the CPS report may be admissible under the business records exception outlined in Pa.R.E. 803(6), which provides:

Records of a Regularly Conducted Activity. A record (which includes a memorandum, report, or data compilation in any form) of an act, event or condition if,

(A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a "business", which term includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) neither the source of information nor other circumstances indicate a lack of trustworthiness.

Pa.R.E. 803(6).

The trial court did not discuss the business records exception either in court or in its opinion. While this exception could potentially apply to the instant report, our review is guided by the Pennsylvania Supreme Court's holding in *In re A.J.R.-H.*, which held that exhibits which were not admitted pursuant to a proper foundation to support the exception were inadmissible. *In re A.J.R.-H.*, 188 A.3d at 1167-68. Further, the *In re A.J.R.-H.* Court did not find the error harmless. *Id*.

- 14 -

This Court's recent non-precedential decision in ***Interest of T.T.*** supports this conclusion.[9] ***Interest of T.T.***, 2019 WL 6358935 (Pa. Super. filed 11/27/19). In ***Interest of T.T.***, the juvenile court admitted a CPS report as a business record without requiring DHS to lay a proper foundation to any hearsay exceptions, and allowed a DHS investigator to reiterate the hearsay statements wholesale into the record. ***Id.*** DHS did not lay a foundation for the preparation and custodianship of the CPS report. ***Id***. Similarly, because the majority of DHS's witness's in-court testimony was founded upon the same statements compiled in the report, his testimony was insufficient to cure the juvenile court's error in admitting the hearsay. ***Id***.

The situation in ***Interest of T.T.*** is analogous to the instant case. As in ***Interest of T.T.***, there was no effort to lay a foundation for the CPS report. Similarly, Ms. Johnson and Ms. Shainman testified regarding the allegations in the report as well as to Child's out-of-court statements, and the testimony repeating the allegations is insufficient to cure the error in the admission of the inadmissible hearsay. ***Id.***

We now turn to M.L.L.'s arguments regarding the testimony of Ms. Johnson and Ms. Shainman, which he characterizes as inadmissible hearsay

---

[9] We recognize that ***Interest of T.T.*** is an unpublished decision, and cite it for its persuasive value. ***See*** Pa.R.A.P. 126(b) (unpublished non-precedential decisions of the Superior Court filed after May 1, 2019 may be cited for their persuasive value).

under the Tender Years Hearsay Act, 42 Pa.C.S. § 5986, as no motion was filed or *in camera* hearing held. **See** M.L.L.'s Brief at 14-15.

Initially, we note that two separate statutory provisions govern the admission of the out-of-court statements of child victims. The Tender Years Hearsay Act, 42 Pa.C.S. § 5985.1, creates an exception for the out-of-court statements of victims of various enumerated offenses in criminal and civil proceedings. ***See Commonwealth v. G.D.M., Sr.***, 926 A.2d 984, 988 (Pa. Super. 2007); 42 Pa.C.S. § 5985.1.

> The exception provides:
>
> (a) General rule.—An out-of-court statement made by a child victim or witness, who at the time the statement was made was 12 years of age or younger, describing any of the offenses enumerated in 18 Pa.C.S. Chs. 25 (relating to criminal homicide), 27 (relating to assault), 29 (relating to kidnapping), 31 (relating to sexual offenses), 35 (relating to burglary and other criminal intrusion) and 37 (relating to robbery), not otherwise admissible by statute or rule of evidence, is admissible in evidence in any criminal or civil proceeding if:
>
>> (1) the court finds, in an *in camera* hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability; and
>>
>> (2) the child either:
>>
>>> (i) testifies at the proceeding; or
>>>
>>> (ii) is unavailable as a witness.

42 Pa.C.S. § 5985.1(a). This provision also requires that

> [a] statement otherwise admissible under subsection (a) shall not be received into evidence unless the proponent of the statement notifies the adverse party of the proponent's intention to offer the

statement and the particulars of the statement sufficiently in advance of the proceeding at which the proponent intends to offer the statement into evidence to provide the adverse party with a fair opportunity to prepare to meet the statement.

42 Pa.C.S. § 5985.1(b). The Tender Years Hearsay Act cannot apply to Child's statements in this case, because no notice was given pursuant to the statute.

By contrast, 42 Pa.C.S. § 5986 governs the admission of statements made by child victims of sexual abuse in dependency proceedings initiated under Chapter 63 specifically, and states that,

(a) General rule.--A statement made by a child describing acts and attempted acts of indecent contact, sexual intercourse or deviate sexual intercourse performed with or on the child by another, not otherwise admissible by statute or court ruling, is admissible in evidence in a dependency proceeding initiated under Chapter 63 (relating to juvenile matters), involving that child or other members of that child's family, if:

(1) the court finds, in an *in camera* hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

(2) the child either:

(i) testifies at the proceeding; or

(ii) is found by the court to be unavailable as a witness.

42 Pa.C.S. § 5986.

Although 42 Pa.C.S. § 5986 does not require notice, it does not apply to the instant matter either. Here, there was no separate *in camera* hearing prior to Child's testimony. Rather, Child testified *in camera* and, afterward, the court stated that it found Child's statements credible. The court, after hearing Child's testimony *in camera*, stated:

I find the child to be extremely credible in describing what happened to her. She may not recall whether it was four years or two years, but it was quite clear to the [c]ourt that this happened, and that the perpetrator was [M.L.L.]. So therefore with regard to [M.L.L.], I am making a finding of child abuse under (b)(1)(4).

N.T., 3/11/19, at 82. Notably, the court did not find that the time, content, and circumstances provided a sufficient indicia of reliability. The lack of a finding regarding time, content, and circumstances is particularly problematic when the timing of the incidents was at issue. Accordingly, the court also erred in admitting the out-of-court statements of Child as reported under 42 Pa.C.S. § 5986.

For all of the foregoing reasons, we are constrained to vacate the ordering finding that Child was the victim of child abuse as defined at 23 Pa.C.S. § 6303(b.1)(4), and we remand the case to the juvenile court for a new hearing.[10]

---

[10] We acknowledge that the result of our disposition is to require Child to undergo the trauma of a new hearing. Unfortunately, the errors committed by the trial court cannot be characterized as harmless which would permit us to affirm the trial court's findings. As our Supreme Court made clear in **In re A.J.R.-H.**, the "right for any reason" doctrine which allows an appellate court to affirm the trial court's decision on any basis that is supported by the record, may not be used when the appellate court must weigh evidence or make credibility determinations to reach a conclusion. **In re A.J.R.-H.**, 188 A.3d at 1176. Here, many of the trial court's findings of fact were premised on the inadmissible evidence of the CPS report and Child's out-of-court statements. Even in assessing the credibility of Child's hearing testimony, the inadmissible evidence certainly bolstered her testimony. As our Supreme Court cautioned,

> [I]n order to affirm [the trial court's] decision on another basis (i.e., based on testimony that was untainted by the erroneous admission of the [evidence]), we would have to engage in fact finding, weigh the competent (non-hearsay) testimony presented,

Order vacated and case remanded for further proceedings consistent with this memorandum.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/12/20

---

and make our own credibility determinations.  As this is far afield of our appellate court function, we cannot affirm under the right for any reason doctrine.

*Id.* at 1178.