J-A24042-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NASIR BUFORD | : | |
| | : | |
| Appellant | : | No. 1616 EDA 2020 |

Appeal from the PCRA Order Entered November 17, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0007423-2011

BEFORE: LAZARUS, J., DUBOW, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.: **FILED OCTOBER 26, 2021**

Nasir Buford (Buford) appeals from the order entered in the Court of Common Pleas of Philadelphia County (PCRA court) dismissing, without a hearing, his first petition filed pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. Buford claims that trial counsel was ineffective relating to the trial court's jury instructions and the Commonwealth's closing argument to the jury. We affirm.

## I.

### A.

On July 23, 2012, a jury convicted Buford of first-degree murder, possession of an instrument of a crime and firearms not to be carried without

---

[*] Retired Senior Judge assigned to the Superior Court.

a license.  The charges stemmed from the September 18, 2010 shooting death of 21 year-old Nathaniel Palmer (Palmer) in a Philadelphia alleyway resulting from a drug dispute.   Buford was a neighborhood drug dealer and he suspected that Palmer had stolen drugs from his residence.  In the presence of witnesses, Buford shot Palmer three times, in the right shoulder, back and chest.  One of these witnesses, Yvonne Henderson (Henderson), died before Buford's trial.  However, her preliminary hearing testimony identifying Buford as the shooter was read to the jury.

During closing argument, defense counsel largely focused on the conduct of Philadelphia Police in general and on the officers involved in this case:

> The violence in Philadelphia is out of control and we're sick of it, but just convicting Nasir Buford because of the violence in Philadelphia doesn't fix it.  How do we fix it?  Some District Attorneys could argue harsher punishments, more gun control; and some of the cynical defense attorneys will say get those dirty cops off the force.  That's all wrong.  It's all wrong.  You hire more cops, you hire more detectives so they can do their job and not go through the motions; so they can uncover every stone so then the criminals would be, like, man, they're getting the phone records, they're getting this, they're getting that.  Maybe then they'll be afraid to commit a crime.

> \*     \*     \*

> Detectives wanted a quick resolution and they got it.  Per the detective, we got a quick resolution. . . .

> \*     \*     \*

Now, Detective [Joseph] Bamberski[1] is nice as can be, but it's not a question about whether he's nice or not, whether you like him or not. He's a professional witness. He's testified many, many times. Nathaniel Palmer and Nasir Buford deserve better. If this wasn't an alleged crack dealer shooting another alleged crack dealer, the accused wasn't a crack dealer, we would have these tests, these stones would be uncovered. I've had 911 tapes played, given to me. The victim and the accused were not crack dealers.

\* \* \*

I am not nitpicking at every little thing just to nitpick, but where there's smoke there's fire. That is the smoke to the fire of a poor investigation, one that went through the motions. . . . You have an answer for everything. There's always an answer for everything. Nobody is going to get up here and say I didn't do my job, I didn't do my job.

\* \* \*

Now, what is the remedy? If this is a police brutality case, the remedy is you sue them in civil court. This is a reasonable doubt. Because the detective has already made his decision and hasn't given you all of the evidence. The remedy is here, the remedy is now. He sits up here and laughs. This isn't funny. Maybe some of the questions the Jury is like, all right, well, that's not that big of a question or good of a question. You can't possibly think that some of the cell phone records or the bigger points are not relevant. It's not funny. Detective Bamberski is not the Jury; you are. His decision has been made. Nathaniel Palmer and Nasir Buford deserve better.

(N.T. Trial, 7/20/12, 114-15, 127, 130-31, 133).

In response, the Assistant District Attorney (ADA) made the following

argument:

---

[1] Detective Bamberski was assigned to this case and responded to the scene of the shooting.

Good afternoon, ladies and gentlemen. You know, the hardest part of my job— well, I should say one of the hardest parts— is to sit here almost every case I try anymore and listen to these **fine men** to be maligned for the jobs they do. **I know the job they do**. And after sitting here, maybe you could appreciate a little bit more the job that they do and how difficult it is. They are out on the streets at 1:30, 2:30, 3:30 in the morning picking up evidence; picking up dead bodies; notifying families that their sons, daughters, husbands, wives are dead; doing the things that most of us wouldn't want to do even if we got paid to do it.

**So it's pretty outrageous to sit here and to listen to what I just heard**. But it's okay because that's my job and that's their job. And it rolls off their back most of the time. I don't know how, but it does, but it's not fair. And you can say, well, he's defending his client, he's arguing what he has to argue. That's all well and good. But sometimes it goes a little too far. To say that that man didn't do his job because **this was one drug dealer killing another is outrageous**. **It's disgusting**. And that's not fair to that family who's sitting here today who lost their son.

And Detective Bamberski, I think for being a detective for 31 years, he told you I handle this investigation the way I handle them all. And he did that in this case. They had their killer within two days. Within two days. And the Judge told you in the beginning, this isn't TV. This is far from TV, believe me. Because we live this every day. We in this CJC and the Philadelphia Police Department and the District Attorney's Office, we live what you watch on CSI and Special Victims. We live it. And I am sorry to say, but those people live it too. It's realty.

And he wants to talk about the violence in Philadelphia. I am not going to talk about the violence in Philadelphia because that's not what I am here for. I am here to prosecute Nasir Buford for what he did that night, for the crime he committed that night against Nathaniel Palmer. And that's what you're here to decide; not whether the murder rate is too high, there's too many guns, there's not enough police. That's for other people to decide; that's not for you to decide. You're to decide did he do it, do we have the right guy?

**And I submit to you from the evidence that you heard from up here and some of the evidence you didn't hear from up there, we have the right guy**. Let's see the evidence that

we do have in this case. Because I am going to focus on that. Counsel didn't want to focus on that. I am going to focus on that.

(***Id.*** at 134-136) (emphases added to challenged comments).

At the conclusion of trial, the court instructed the jury as follows regarding the elements of first- and third-degree murder:

> The defendant, Nasir Buford, is charged with both murder in the first degree and murder in the third degree.
>
> First degree murder. In order to convict the defendant of first degree murder, you must find the following three elements beyond a reasonable doubt: One, that the defendant killed the victim, Nathaniel Palmer; two, that the defendant specifically intended to kill the victim and; three, that the defendant acted with malice.
>
> Specific intent to kill means the killer intends to kill, that he does so deliberately, willfully and with premeditation. That means he thought about it long enough to be aware of his own intention. How much time does it take to premeditate and reach that intention to kill? There is no particular length of time needed or any planning or previous thought. It can happen in a fraction of a second.
>
> All that is needed is enough time so that the defendant can and does completely form the intent to kill and is aware of that intent to kill. **Think about the defendant's words**, actions, and all the surrounding circumstances in deciding what the defendant's intent was. If you believe the defendant intentionally used a deadly weapon on a vital part of the victim's body, you may, if you choose, use that as evidence of a specific intent to kill.
>
> Now, malice in the law, ladies and gentlemen, means something a little different than what it means in ordinary speech. It does not mean nasty or spiteful. It means more than hatred, spite or ill will. It means the defendant had the state of mind bad enough to make a killing a murder. **It means there was intent to kill or intent to inflict serious bodily injury or a wicked disposition, hardness of heart, cruelty, a disregard of consequences for social duty that shows both a disregard for the facts that his act would probably cause death or**

**serious bodily injury and an extreme indifference to the value of human life**.

Again, in deciding if the defendant acted with malice, consider his **words** and actions and all the surrounding circumstances. If you believe the defendant intentionally used a deadly weapon on a vital part of the victim's body, you may, if you choose, use that as evidence of malice. If you are satisfied that the three elements of first degree murder have been proven beyond a reasonable doubt, you should find the defendant guilty of first degree murder. Otherwise, you must find the defendant not guilty of this crime.

Third degree murder. Third degree murder is a killing with malice that is not first or second degree murder. Understand, ladies and gentlemen, second degree is not involved in this case. I mention it here only because that is how third degree murder is defined. Accordingly, in order to find the defendant guilty of third degree murder, you must find the following two elements beyond a reasonable doubt: One, that the defendant killed the victim, Nathaniel Palmer and; two, that the defendant acted with malice.

The definition of malice here is the same as I just defined for you when I defined first degree murder. If you are satisfied that the two elements of third degree murder have been proven beyond a reasonable doubt, you should find the defendant guilty of third degree murder. Otherwise, you must find the defendant not guilty of this crime.

In summary, as you just heard, the two elements of third degree murder are also elements of first degree murder. The difference between these two crimes is that first degree murder contains an additional element, that the defendant specifically intended to kill the victim.

(**Id.** at 167-170) (emphases added to challenged portion of instructions).

The court also issued a "no-adverse-inference" instruction directing the jury that it may not draw any negative inference from Buford's decision not to testify on his own defense at trial because a defendant has the unqualified constitutional right not to testify. (**See id.** at 154).

- 6 -

**B.**

After the jury found Buford guilty of the aforementioned offenses, the trial court sentenced him to life imprisonment. Buford appealed his judgment of sentence and raised seven issues for review. We affirmed the judgment of sentence on October 8, 2014, in a published opinion. (**See Commonwealth v. Buford**, 101 A.3d 1182 (Pa. Super. 2014)). The Pennsylvania Supreme Court denied Buford's petition for allowance of appeal on May 1, 2015. (**See Commonwealth v. Buford**, 114 A.3d 415 (Pa. 2015)).

Buford timely filed the instant PCRA petition on June 27, 2016, and the Commonwealth filed a response in May 2017. The PCRA court issued its order dismissing the petition without a hearing on November 17, 2017. Buford did not appeal the order at that time but sought reinstatement of his right to do so in May 2019. The PCRA court entered an order reinstating his right to appeal the denial of PCRA relief *nunc pro tunc* on August 5, 2020. Buford timely appealed and he and the PCRA court complied with Rule 1925. **See** Pa.R.A.P. 1925(a)-(b).[2]

---

[2] In reviewing the denial of PCRA relief, our standard of review is limited to whether the record supports the PCRA court's factual determinations and whether its decision is free of legal error. **See Commonwealth v. Lopez**, 249 A.3d 993, 998 (Pa. 2021). We apply a *de novo* standard of review to the PCRA court's legal conclusions. **See id.** "The PCRA court's findings and the evidence of record are viewed in the light most favorable to the Commonwealth as the winner before the PCRA court." **Id.** (citation omitted).

**II.**

Buford presents four issues for review, all of which allege ineffective assistance of trial counsel. Buford claims counsel was ineffective for failing to object to certain language the trial court used in its closing instructions to the jury, which he claims was erroneous and prejudicial. Buford also challenges counsel's failure to object to portions of the ADA's closing argument which, in his view, constituted prosecutorial misconduct. Buford maintains that, at a minimum, he is entitled to an evidentiary hearing on his petition.

It is well-settled that we presume counsel has rendered effective assistance. *See Commonwealth v. Sarvey*, 199 A.3d 436, 452 (Pa. Super. 2018). "To prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result." *Id.* (citation omitted). "If a petitioner fails to prove any of these prongs, his claim fails." *Id.* (citation omitted). Counsel cannot be deemed ineffective for failing to lodge a meritless objection. *See Commonwealth v. Epps,* 240 A.3d 640, 649 (Pa. Super. 2020), *appeal denied*, 2021 WL 2550503 (Pa. filed June 22, 2021).

Additionally, there is no absolute right to an evidentiary hearing on a PCRA petition, and a hearing is not necessary if the PCRA court can determine from the record that no genuine issues of material fact exist. *See Commonwealth v. Maddrey*, 205 A.3d 323, 328 (Pa. Super. 2019), *appeal*

*denied*, 218 A.3d 380 (Pa. 2019). "To obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing." **Id.** (citation omitted).

### A.

Buford first contends trial counsel was ineffective for failing to object to the trial court's legally incorrect and confusing jury instruction explaining the *mens rea* necessary for a first-degree murder conviction. He asserts the instruction included "diluted" language defining malice that allowed for a first-degree murder conviction based on a finding that he merely acted with the intent to inflict serious bodily injury rather than with the specific intent to kill. (**See** Buford's Brief, at 25-26).

A trial court has broad discretion in instructing the jury and can choose its own wording so long as the law is clearly and accurately presented. **See Commonwealth v. Vucich**, 194 A.3d 1103, 1111 (Pa. Super. 2018). When reviewing a jury instruction, we must "consider the entire charge as a whole, not merely isolated fragments, to ascertain whether the instruction fairly conveys the legal principles at issue." **Commonwealth v. Reid**, 2021 WL 4303595, at *26 (Pa. filed Sept. 22, 2021) (citation omitted). "An instruction will be upheld if it clearly, adequately and accurately reflects the law." **Id.** (citation omitted). Additionally, "it is well settled that the jury is presumed to

follow the trial court's instructions." **Vucich**, **supra** at 1113 (citation omitted).

In this case, the trial court was tasked with instructing the jury regarding the elements of both first- and third-degree murder. "A criminal homicide constitutes murder of the first-degree when it is committed by an intentional killing." 18 Pa.C.S. § 2502(a). "To sustain a conviction for first-degree murder, the Commonwealth must establish beyond a reasonable doubt that: (1) a human being was unlawfully killed; (2) the defendant was responsible for the killing; and (3) the defendant acted with malice and the specific intent to kill." **Commonwealth v. Jacoby**, 170 A.3d 1065, 1076 (Pa. 2017) (citation omitted). In contrast, "[t]hird-degree murder occurs when a person commits a killing which is neither intentional nor committed during the perpetration of a felony, but contains the requisite malice." **Commonwealth v. Akhmedov**, 216 A.3d 307, 322 (Pa. Super. 2019), *appeal denied*, 224 A.3d 364 (Pa. 2020) (citation omitted). "Malice is a legal term, which encompasses not only a particular ill-will, but every case where there is wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured." **Id.** (citation omitted). "Malice may be found where the actor consciously disregards an unjustified and extremely high risk that the actor's conduct might cause death or serious bodily injury." **Id.** (citation omitted).

The trial court instructed the jury as follows: "In order to convict the defendant of first-degree murder, you must find the following three elements beyond a reasonable doubt: One, that the defendant killed the victim, Nathaniel Palmer; two, that the defendant **specifically intended to kill** the victim **and**; three, that the defendant acted with malice." It then explained the meaning of specific intent to kill, the amount of time needed to formulate this intent and that use of a deadly weapon on a vital part of the body— here, a bullet from a firearm into the chest —can be considered as evidence of specific intent. The court emphasized: "the two elements of third-degree murder are also elements of first-degree murder. The difference between these two crimes is that **first-degree murder contains an additional element, that the defendant specifically intended to kill the victim**. (N.T. Trial, 7/20/12, at 167, 170).

As can be seen, the record reflects that the trial court clearly and repeatedly informed the jury that a first-degree murder conviction required a finding of specific intent to kill, while a third-degree murder conviction did not require such finding. We presume that the jury followed this directive. *See Vucich*, *supra* at 1113. Because the instruction viewed as a whole instead of in insolated fragments properly informed the jury of the *mens rea* necessary for a first-degree murder conviction, trial counsel was not ineffective for failing to raise a meritless objection thereto.

**B.**

Buford also claims trial counsel was ineffective for failing to challenge the trial court's instruction directing the jury to: "Think about the defendant's **words**, actions and all the surrounding circumstances in deciding what the defendant's intent was."  (Buford's Brief, at 45) (quoting N.T. Trial, 7/20/12 at 168) (emphasis in brief).  Buford characterizes this excerpt as an improper reference to his decision not to testify in his defense at trial and "permitted the jury to use [his] silence against him."  (**Id.** at 44).

The PCRA court explained its use of this language:

> Once again, Buford draws an insupportable conclusion by carefully selecting an isolated remark and divorcing it from the totality of the Court's instruction.  This he cannot do.  The Court at least three times issued the standard instruction warning the jury that no negative inference could be drawn from Buford's constitutional right not to testify. (N.T. Trial, [7]/18/12, at 20-21; N.T. Trial, 7/20/12, at 154).  Buford cites no authority for the proposition that juries will ignore such an instruction and offers no basis for suggesting that the jury did so in this case.  Buford's counsel had no basis for objecting to the Court's statement.

(PCRA Court Opinion, 4/09/21, at 13) (case citation omitted).

We agree with the PCRA court that, when viewing the challenged language in the context of the entire instruction, which included a "no-adverse-inference" directive advising the jury of Buford's constitutional right to remain silent and to draw no negative inference therefrom, counsel had no basis for objecting to the court's statement.  The jury is presumed to have followed the court's instruction not to consider Buford's silence in rendering its verdict and counsel cannot be deemed ineffective for failing to object to

the court's general reference to his "words." Buford's claim to the contrary merits no relief.

## C.

Buford's two remaining issues assert trial counsel was ineffective for failing to object to the ADA's prosecutorial misconduct during her closing argument to the jury. Buford maintains that the ADA acted improperly by: (1) expressing her personal opinion regarding the good character of Commonwealth witnesses and her personal views on the "outrageous" defense strategy; and (2) referring to evidence not in the trial record that the jury "didn't hear from up there." (Buford's Brief, at 37, 40).

> It is well established that a prosecutor is free to argue that the evidence leads to guilt and is permitted to suggest all favorable and reasonable inferences that arise from the evidence. A prosecutor also may argue h[er] case with logical force and vigor.

> \* \* \*

> This Court has explained that comments made by a prosecutor to a jury during closing argument will not form the basis for granting a new trial unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so they could not weigh the evidence objectively and render a true verdict. Like the defense, the prosecution is accorded reasonable latitude and may employ oratorical flair in arguing its version of the case to the jury. Prosecutorial misconduct will not be found where the comments were based on the evidence or derived from proper inferences.

> Generally speaking, a prosecutor commits misconduct by improperly bolstering the credibility of a Commonwealth witness when the following two factors are met: (1) the prosecutor must assure the jury the testimony of the government witness is credible, and (2) this assurance must be based on either the

> prosecutor's personal knowledge or other information not contained in the record. **We further observe that a prosecutor may make fair comment on the admitted evidence and may provide fair rebuttal to defense arguments. Even an otherwise improper comment may be appropriate if it is in fair response to defense counsel's remarks. Any challenge to a prosecutor's comment must be evaluated in the context in which the comment was made. In addition, we must presume that the jury followed the trial court's instructions**.

*Reid*, *supra* at \*20, 23-24 (citations and quotation marks omitted; emphasis added).

In this case, as previously quoted extensively, the ADA did refer to the police officers who investigated this case as "fine men" and cast them in a positive light, while describing the defense theory that the police did not thoroughly investigate this case because it involved two drug dealers as "disgusting." (N.T. Trial, 7/20/12, at 135). Although Buford claims that these comments unfairly bolstered the Commonwealth's case, he cannot in good faith assert that defense counsel did not open the door for the ADA's response to the repeated assertion that the police did not "do [their] job[s]," that the lead detective was a "professional witness" and that the case was improperly handled because it involved "an alleged crack dealer shooting another alleged crack dealer." (*Id.* at 130-31). Indeed, defense counsel's closing argument largely focused on the conduct of the Philadelphia Police in general and the investigation led by Detective Bamberski in particular, which the defense represented was tainted and not treated with professionalism because it involved drug dealers.

- 14 -

Additionally, in its charge to the jury, the trial court repeatedly emphasized the jury was the sole factfinder and judge of the witnesses' credibility; and the jury's recollection of the facts and circumstances of the case controlled their assessments. (*See id.* at 152-53). Again, we must presume the jury followed these instructions. *See Vucich*, *supra* at 1113.

Based on the forgoing, we conclude the challenged comments made by the ADA during closing argument did not rise to the level of prosecutorial misconduct because they did not have the unavoidable effect of prejudicing the jurors "forming in their minds fixed bias and hostility toward the defendant so they could not weigh the evidence objectively and render a true verdict." *Reid*, *supra* at *23. Thus, we agree with the PCRA court's determination that Buford's claim of ineffective assistance of counsel for failure to object to the prosecutor's comments lacks arguable merit.

**D.**

Buford next contends trial counsel was ineffective for failing to object to the ADA's reference during closing argument to "some of the evidence you didn't hear from up there." (Buford's Brief, at 40) (quoting N.T. Trial, 7/20/12, at 136). Buford claims this comment invited the jury to "engage in wild speculation about the evidence it did not hear" in the courtroom and to "surmise about whether the evidence it did not hear also was inculpatory." (Buford's Brief, at 42).

The PCRA court determined that when read in context, the ADA's comment was plainly a reference to the fact that eyewitness Henderson died prior to trial and that the jury was, therefore, unable to hear her testimony directly. The court found Buford's argument "untenable" as "[t]he prosecutor's remarks say absolutely nothing about withheld evidence; there is nothing in the language that permits such an inference." (PCRA Ct. Op. at 12).

Further, the trial court repeatedly instructed the jury throughout trial that arguments of counsel are not evidence. (**See** N.T. Trial, 7/18/12, at 29; 7/19/12, at 106; 7/20/12 at 112, 162). Again, the jury is presumed to have followed this instruction with regard to the ADA's isolated reference to "evidence you didn't hear."

After review of the prosecutor's comment in the context of Henderson's absence from trial and in light of the trial court's instruction that counsels' arguments are not evidence, we agree with the PCRA court's conclusion that Buford's claim that defense counsel should have objected to the ADA's statement is meritless. Additionally, based on the foregoing, we are in agreement with the PCRA court that Buford has failed to raise any genuine issue concerning a material fact warranting an evidentiary hearing. **See Maddrey**, **supra** at 328. We discern no abuse of discretion in the court's denial of the PCRA petition without a hearing.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/26/2021